Boyd vs. The City of Milwaukee and others.

---

**BOYD, Respondent, vs. THE CITY OF MILWAUKEE and another, imp., Appellants.**

**BOYD, Respondent, vs. THE WESTERN PAVING & SUPPLY COMPANY, imp., Appellant.**

*January 28 — March 10, 1896.*

*Municipal corporations: Classification of cities: Constitutional law: General or special law? Street improvements: Proceeding without petition: Assessments: Repairs: Legalizing irregularities: Paving opposite public grounds.*

1. Ch. 310, Laws of 1893, relating to assessments for paving and repaving streets "in any city having a population of 20,000 inhabitants or more," is construed as applying to all cities as soon as they at-

Boyd vs. The City of Milwaukee and others.

tain that population, and is *held* to be a general law and therefore not in violation of subd. 9, sec. 31, art. IV, Const., which prohibits the passage of any special law "for incorporating any city, town or village, or to amend the charter thereof."

2. A resolution of the common council of a city, declaring that a street is unsafe for public use and that it is necessary to proceed with the paving of it without petition of the property owners because such owners have failed to make it in a safe and suitable condition and have failed to present a petition therefor, states a sufficient reason for proceeding without petition.

3. Under a city charter providing that the expense of keeping the streets in repair shall be paid out of the ward funds, an assessment on the abutting property for the paving of a street is invalid where the work was done under a contract requiring the contractor to keep it in good order and repair for five years after its completion and to guaranty that during that period neither the city nor the property owners should be at any expense whatever for any repairs made necessary by defective workmanship or material, *or other reason,* except the cutting through of the pavement for the purpose of laying certain pipes.

4. Ch. 302, Laws of 1895, which purports to legalize contracts and special assessments for street improvements in certain cases, and which by its terms applies only to cities of the first and second classes, and therefore in fact applies only to the city of Milwaukee, is, so far as it attempts to cure past irregularities, a special act and void under subd. 9, sec. 31, art. IV, Const.

5. Where a strip forty-two feet wide in the middle of an avenue has been converted by the city into a park, and maintained as such with a roadway fifty-eight feet wide on each side of it, the owner of abutting property cannot be charged with the cost of improving more than one half of the roadway on his side of the street, under a charter providing that the expense of paving to the middle of the street opposite the public grounds of the city shall be paid from the ward fund.

APPEALS from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

This is an action to set aside a special assessment against plaintiff's property for the laying of an asphalt pavement in front thereof. The plaintiff owns a piece of land ninety feet in width, fronting on Grand avenue, in the city of *Milwaukee;* and in the year 1894 the city made a contract with

the appellant the *Western Paving & Supply Company* to lay an asphalt pavement, resting on a concrete foundation, on said Grand avenue, for several blocks, including that part of the avenue in front of plaintiff's property. The pavement was laid, and a portion of the cost assessed against the plaintiff's property, and a certificate issued to the supply company for such assessment. Prior to the sale for taxes this action was brought to perpetually enjoin the sale and set aside the tax, and upon the complaint an order to show cause was issued and served, why there should not be an injunctional order *pendente lite.* The allegations on which it was claimed on the hearing of this motion that the assessment was illegal and void were, in brief: (1) That, the street having once been paved, there could be no legal assessment for repaving it, but that the cost of repaving must, under the city charter of *Milwaukee,* be paid out of the ward fund. (2) No petition of property owners was presented to have the street repaved, and no sufficient resolution was ever passed by the council by which such paving could be done without a petition. (3) The contract for paving provides that the contractors will keep the pavement in good order and repair for five years; thus charging property owners with the cost of street repairs, when the charter provides that street repairs shall be paid for out of the ward fund. (4) A small park, forty-two feet in width and 700 feet in length, exists in the center of Grand avenue, in front of plaintiff's property; and the plaintiff has been assessed for the paving of the whole roadway between the curb and said park, whereas the city charter provides that the expense of paving to the middle of the street, adjacent to public grounds, shall be paid from the ward fund. The defendants appeared on the hearing, and filed affidavits in opposition to the motion; but the injunctional order was granted *pendente lite,* and from this order the defendants have appealed.

Boyd vs. The City of Milwaukee and others.

.For the appellants there was· a brief by *Hoyt & Ogden*, attorneys for the *Western Paving & Supply Co.*, and *Charles H. Hamilton*, attorney for the. city of *Milwaukee* and its treasurer; a brief in reply by *Hoyt & Ogden*, attorneys for the appellant company, and *Winkler, Flanders, Smith, Bottum & Vilas*, of counsel; and oral argument by *F. M. Hoyt* .and *E. P. Vilas*.

For the respondent there was a brief by *Howard & Mallory*, and oral argument by *Samuel Howard.* They argued, .among other things, that ch. 310, Laws of 1893, is· a special law within the inhibition of sec. 31, art. IV, Const. Ch. 312, Laws of 1893, having divided the cities incorporated under the general law into four classes, the legislature has no power to pass a classification law which does not classify all the municipal corporations of the state, or which is not .amendatory to the law classifying such corporations. *Darcy v. San Jose*, 104 Cal. 642. Ch. 310 excludes from its opera- ·tion all except three or four of the cities of the state, and creates a second class or grade of cities within the third class as established by ch. 312, Laws of 1893. This is the most vicious kind of special legislation. *Darcy v. San Jose*, 104 Cal. 642; *Topeka v. Gillett*, 32 Kan. 431·; *State ex rel. Parker v. Newark*, 57 N. J. Law, 83. ·Ch. 310 is a special law, also, because it is intended to and does affect only char- ters now existing, and because it applies to the subject ex- isting special legislation contained in the charter of the city of *Milwaukee*. *Murnane v. St. Louis*, 123 Mo. 479; *Alexander v. Duluth*, 57 Minn. 47.

WINSLOW, J. The objections to the validity of the assess- ment in question will be taken up in the order indicated in the foregoing statement of facts.

1. It is true that the complaint shows that this street in front of plaintiff's property was, in the year 1876, graded and paved, pursuant to the direction of the city authorities,

at the expense of the abutting lot owners. It is also true that the charter of the city (sec. 2, subch. 7, ch. 184, Laws of 1874, as amended by sec. 5, ch. 388, Laws of 1889) provides that, when a street has been once so graded and paved at the expense of abutting lot owners, the expense of repaving thereof shall be paid out of the ward fund. Had there been no change made in the law, this objection would certainly be fatal. It is provided, however, by ch. 310, Laws of 1893, that whenever, in any city having a population of 20,000 inhabitants or more, the grading, paving, or repaving of any street with *a permanent paving having a concrete foundation* shall have been duly authorized and assessments therefor made, abutting property shall not be exempt from assessment for benefits on account of such paving until such property shall have paid in the aggregate, in assessments for pavements, the sum of three dollars per square yard for all that part of the *roadway* directly in front of such property and lying between the curb line and the center of *such roadway of said street.* If this is a valid law, it undoubtedly operates to amend the charter of the city of *Milwaukee,* and to change that provision of the charter which precluded assessments for repaving. We think the law is valid. It is argued that it is not a general law, but is special legislation and in violation of subd. 9, sec. 31, art. IV of the constitution, which prohibits special or private legislation "for incorporating any *city,* town or village, or to amend the charter thereof." Within the rules laid down in *Johnson v. Milwaukee,* 88 Wis. 383, we think that it is a general law, because it is legislation for a class of cities which may reasonably be said to require legislation peculiar to itself. The classification of cities which was upheld in that case was a classification into two classes, viz. those having a population of 3,000 or more, and those not having such a population. The reasoning upon which the law in that case was sustained applies with equal force in the present

case.   We construe the law as applying to all cities which shall attain a population of 20,000, as soon as they reach that population.   We conclude, therefore, that the law is a general law, and valid so far as the provisions bearing on the controversy in this action is concerned.   Being valid, it operates as an amendment of the charter of *Milwaukee*, so far as to authorize assessments of benefits for repaving to the *center of the roadway* in front of plaintiff's property.

2. We shall spend but little time on the second objection. It is true that no petition of property owners was ever presented for the laying of the pavement, but it is also true that the charter provides that paving may be done in the absence of a petition, upon the passage of a resolution by the common council declaring why it is necessary to proceed without a petition.   Such a resolution was passed, declaring the street to be unsafe for public use, and that it was necessary to proceed without petition because the property owners had failed to make said street in a safe and suitable condition for the public use, and had failed to present to the council a petition therefor.   We regard the reason stated as entirely sufficient.

3. We come now to the most serious question in the case. It appears by the affidavits that the specifications for the paving adopted by the city provide as follows:

" GUARANTEE.   The contractor will be required, without additional compensation, to keep in good order and repair all the work done under these specifications and contracts for a period of five (5) years from and after the date of its completion, and to guarantee that during that period neither the municipal authorities or property owners shall be at any expense whatever for any repairs made necessary on account of any defective workmanship or material, or other reason, excepting where the same has been caused by cutting through the pavement for the laying or repairing of sewers, drains, gas, water, or electric service pipe, or other

work authorized by the board of public works, and that the pavement shall be in good condition and repair at the end of said period, and there will be retained until the expiraration of such time, out of the money payable to the contractor, such per cent. of the amount of this contract as the board of public works may deem proper, not exceeding, however, ten per cent. of the aggregate amount of the contract, as a guarantee that the contractor will conform to the requirements."

The contract incorporated these specifications in its terms, and contained the further agreement as follows: " And the said parties of the first and second parts [the contractor and sureties], for themselves, their heirs, executors, and administrators, further covenant and agree that, for the period of five years from the date of the completion of the said work, they will keep in good order and repair all of the said work done under this contract (excepting only such part or parts of said original work as may have been disturbed by cutting through the pavement for the laying or repairing of sewers, drains, gas, water, or electric service pipe, or other work authorized by the board of public works), and that whenever directed by the said board, by a notice served upon them or their agents, they will at once proceed to make the repairs as thus directed, and, in case of failure or neglect on their part to do the work within five days from and after the date of the service of such notice upon them or their agents, then the said board of public works shall have the right to purchase such materials and to employ such person or persons as it may deem necessary to undertake and complete the said repairs, and charge the expense thereof to the above parties of the first and second parts."

The charter of the city of *Milwaukee* contains no provision for the levying of assessments against abutting property for *repairs* of a pavement or a street. In fact, it specifically provides that the expense of maintaining and keeping in re-

pair the street and the pavement shall be paid out of the ward fund. Therefore, it was illegal to include in a contract for paving any charge for keeping in repair the pavement for a series of years. Manifestly, such a charge has been included here, and in our judgment it is fatal to the validity of the assessment. Such has been the holding of two courts of last resort upon the identical question here presented. *Brown v. Jenks*, 98 Cal. 10; *Excelsior Paving Co. v. Leach* (Cal.), 34 Pac. Rep. 116; *Verdin v. St. Louis* (Mo.), 27 S. W. Rep. 447. To the same effect is *People ex rel. Hall v. Maher*, 56 Hun, 81. There is but one decision to the contrary to which we have been referred, and that is the case of *Schenectady v. Trustees of Union College*, 66 Hun, 179, where a contract somewhat similar in terms, though not so broad and sweeping as the one before us, was held to be a mere guaranty of quality and workmanship. This case was reversed upon another question in the court of appeals. 144 N. Y. 241. It is true that such a contract was held valid in *Morse v. West Port*, 110 Mo. 502, but it was so held because the city charter expressly authorized assessments upon adjoining lots for *repairing* streets. Neither upon principle nor authority can such an assessment be supported where, as here, the corporate charter requires the expense of *repairing* streets to be paid out of general funds. It will not do to say that these agreements to repair are in effect but guaranties of material and workmanship. Such a contention is made here, and an affidavit was introduced showing that the life of such a pavement (if properly laid) was at least ten years, and that it would require no repairs at all for five years. If the agreements to repair were confined to repairs made necessary by defective workmanship or material, the argument would be entitled to serious consideration. But they go further. They cover, in terms, everything that may happen to the pavement, except the cutting through it for the purpose of laying certain pipes. Just how far these agreements might go

in case of damage to the pavement from unusual causes, it is not necessary to consider, nor is the question properly here. It is sufficient to say that it is very evident that no one in possession of good business sense will make such a contract without considering and charging for the very extended liability which he assumes of keeping the pavement in repair for five years, and thus the property owner is compelled to pay for that which the law charges upon the ward in general. We shall not strain the language of the contract or of the law for the sake of holding a special assessment of this nature valid. All such assessments are harsh proceedings at the best, and it is a salutary rule which holds the authorities making them quite strictly to the terms of the law.

But it is argued that this difficulty has been cured by the provisions of ch. 302, Laws of 1895. *Milwaukee* is one of the cities of the state which is operating under a special charter. By ch. 238, Laws of 1895, all cities under special charters were divided into four classes, corresponding in population to the classes of cities acting under the general charter. The classes are: (1) All cities having a population of 150,000 or over; (2) all containing 40,000 to 150,000; (3) all containing 10,000 to 40,000; (4) all containing less than 10,000. Under this classification, *Milwaukee* is the only city in the state of the first class, and there are none of the second class. Ch. 302 aforesaid is an act providing for legalizing special assessments for street improvements, and providing for reassessment of such special taxes in case they are held void for certain specified reasons. The act applies, in terms, only to cities of the first and second classes; so that in fact, at present, it only applies to *Milwaukee*. It is also retrospective as well as prospective in its nature. It covers any action "now pending or hereafter brought." The third section was evidently intended to cure the difficulty in this case. It reads as follows: "No special assessment

or certificate thereof or tax-sale certificate based thereon shall be held to be invalid for the reason that any contract which has been heretofore or may hereafter be let contains on the part of the contractor a guaranty or any provision to keep the work done under such contract in good order or repair for a limited number of years, when such guaranty or provision was inserted therein for the purpose of insuring the proper performance of such work in the first instance. All such provisions in contracts for doing public work, inserted for the purpose aforesaid, are hereby legalized, and all such provisions shall be deemed *prima facie* to have been inserted for that purpose, unless the time during which the contractor is required to keep the work in good order or repair shall exceed five years."

So far as this act is a curative statute for past irregularities,— that is, so far as it purports to legalize or help out contracts or assessments made before its passage,— we think it manifestly unconstitutional, because it is special legislation. One of the rules laid down in *Johnson v. Milwaukee*, 88 Wis. 383, with regard to legislation by classification, is that the classification must not be based on existing circumstances only. The class must not be so constituted as to preclude addition to the numbers included within it. It is very evident that so much of this law as attempts to cure past irregularities is, and must be, always confined to the city of *Milwaukee*, and it can only apply to an existing state of facts. No other city can ever grow into its class for this purpose, any more than if the act had provided, in terms, that it should apply only to *Milwaukee*. We say nothing as to those provisions of the law which are prospective in their operation, for they are not before us, and other questions will have to be considered in case their validity shall be questioned in the future. On this general subject, see *State ex rel. Harris v. Hermann*, 75 Mo. 340, where a similar question was under consideration, and the authorities are

reviewed.  See, also, the authorities cited in the opinion in *Johnson v. Milwaukee*, 88 Wis. 383, 392.

4. We deem it proper also to consider the question raised under this head, although the foregoing observations will necessarily result in affirmance of the injunctional order. It appears by the papers used on the motion that Grand avenue, in front of plaintiff's premises, was for many years about 158 feet in width for a little more than two blocks. The street existed and was used at that width for about thirty years prior to the year 1883, when the common council of the city passed an ordinance declaring a strip forty-two feet in width and about 700 feet long, in the middle of the avenue, a public park, and turned it over to the board of public works to be improved, ornamented, and maintained as other parks in the city.  Thereupon this strip was converted into a small park, inclosed with stone curbing, and grassed and ornamented, and has been so maintained ever since.  There was left a street on each side fifty-eight feet in width.  The charter provides that the expense of paving to the middle of the street opposite the public grounds of the city shall be paid from the ward fund; but in the present case the plaintiff has been charged with the expense of paving the entire street on her side, from her curb to the park curb.  It is claimed by the plaintiff that she cannot, in any event, be charged with the cost of paving more than one half the roadway on her side of the street. With this contention we agree.  It is true, the forty-two-foot strip was never dedicated or conveyed to the city as a park; but the city has chosen to turn it into a park, to all intents and purposes, and it has been devoted to the use of the general public as a park for more than ten years.  Furthermore, the act of 1893, ch. 310, which alone makes any assessment for repaving possible, provides only "for all that part of the *roadway* directly in front of or abutting such property, and lying between the curb line and the center of

*such roadway* of said street." The assessment is only to be made to the center of the *roadway* of the street in front of the plaintiff's property. We do not think it would be reasonable to construe this language to mean to the center of the park, or to the curb line of the park.

*By the Court.*— Order affirmed.