### PATRICK H. McGLYNN ET AL. V. TOLEDO ET AL.

1. DAMAGES FOR CHANGE OF GRADE CANNOT BE ASSESSED BACK.

Damages awarded to persons owning property along a street on account of change of grade affecting their access to their property, are not properly chargeable against such property owners as a part of the costs and expenses of the improvement of the street.

2. PRESUMPTION AS TO LAW GOVERNING—ESTOPPEL.

Where the petitioners for a street improvement are under the general law the presumption is that what the petitioners ask for at the hands of the council is that they shall proceed under valid laws and according to law, at the time, to make the improvement and assessment therefor. Therefore property owners signing such a petition are not estopped from enjoining the collection of an assessment for damages resulting from a change of grade, unless it appears that they were aware of the fact that the city was proceeding upon the faith of former decisions of the Supreme Court relating to levying assessments.

3. RENT OF STEAM ROLLER INCLUDED IN ASSESSMENT.

The rent of a steam roller is properly included in an assessment for a street improvement where it appears that the contractor agreed to do the work for a certain sum and the city agreed to rent the roller for so much per day.

4. FEES OF MAYOR'S CLERK FOR NOTICES.

Fees for notices served upon non-resident owners of property abutting a street for the improvement thereof, to which it does not appear the mayor's clerk was entitled should be omitted from an assessment against the property owners for the street improvement.

5. GUARANTY AGAINST DEFECTS OF CONSTRUCTION.

The fact that a contract for a street improvement provided that the contractor "will keep in good order and repair all the work" thereunder for a period of five years after its completion and that ten per cent. of the cost thereof shall be withheld in order to enforce the contract for such period, will not invalidate the assessment upon the ground that the repair of the street was not a part of the improvement petitioned for, because a fair construction of the contract would not require the contractor to do anything more than to correct any defects of construction or materials therein.

6. SECTION 2289, REV. STAT.—DEFECTS IN IMPROVEMENT—ASSESSMENT.

Since the amendment of Sec. 2289, Rev. Stat., omitting the words "A substantial defect in the construction of the improvement shall be a complete defense," the fact that that part of a street where sidewalks are to be laid was not brought up to grade, the grade of the street having been changed in making an improvement thereon, cannot be taken advantage of, as a defect in the improvement, in an attack upon the assessment for the street improvement, unless fraud is alleged.

APPEAL.

*H. A. Merrill* and *C. F. Watts*, for the plaintiffs.

*M. R. Brailey*, for the defendants.

PARKER, J.:

This action is brought to enjoin the collection of assessments levied upon property lying along Jackson street between St. Clair street and Thirteenth street, Toledo, Ohio, for the improvement of that street. Various objections are urged to the assessments.

First, it is objected that of the amount assessed $4,023 was awarded as damages to persons owning property along the street on account of the change of grade affecting their access to their property, and it is urged that this amount arising from this source is not properly chargeable against the property owners as a part of the costs and expenses of the improvement of the street.

The statute expressly provides that this shall be included in the amount assessed, it being Sec. 2284, Rev. Stat., which reads as follows:

" The cost of any improvement contemplated in this chapter shall include the purchase money of real estate, or any interest therein, when the same has been acquired by purchase, or the value thereof as found by the jury, where the same has been appropriated, the costs and expenses of the proceeding, the damages assessed in favor of any owner of adjoining lands and interest thereon, the costs and expenses of the assessment, the expense of the preliminary and other surveys, and of printing, publishing the notices and ordinances required, including notice of assessment," etc.

But it is said that to the extent that this statute provides for the assessing of the costs the property acquired for the street or the damages to the property along the street, it is unconstitutional. Whether the cost of the land acquired for the street improvement might be included in the amount to be assessed, or whether any part of that cost might be assessed back upon the parts remaining of the property belonging to the persons from whom the property was acquired, is a subject which has given rise to a great deal of controversy in this state, but ever since the decision of Cleveland v. Wick, 18 Ohio St., 304, that is from that time on until the decision of the Cincinnati L. & N. Railway v. Cincinnati, 62 Ohio St., 465, it was held that such cost might be lawfully included in the amount to be assessed; but by the decision of the case last mentioned, Cleveland v. Wick, *supra*, was overruled and it is distinctly held that such cost of property acquired for this purpose may not be assessed back. I will not take time to pursue the reasoning of the Supreme Court upon the subject; it is entirely unnecessary. The profession generally are pretty well acquainted with that decision and appreciate the importance of it and have, doubtless, read and studied it, and the only question here is, whether damages to property abutting upon a street resulting from a change of grade, stand upon the same footing period? We are of the opinion that such damages do stand upon the same footing.

In the case of Town Council v. Joseph McComb, 18 Ohio, 229 [51 Am. Dec., 453], which was an action for damages resulting from a change of grade, this language is used by the court:

" But when the public interest requires the sacrifice of private property, a very clear principle of justice requires also a compensation to be given for the injury.

"The judgment which we are reviewing sanctions that principle, and gives the compensation. It is not without support from that section in the constitution of the estate, which holds private property inviolate, but subservient to the public welfare, provided compensation be made to the owner."

And there is some further discussion of the matter along that line, showing that the Supreme Court at that time entertained the opinion that thus affecting private property to its detriment and the damage of the owner amounted to a taking of private property.

In Crawford v. Delaware, 7 Ohio St., 460, which was a case of the same character, it is said by Judge Swan, in the course of the opinion:

"The principle decided by the Akron case was this: where a building is erected upon a lot, with a view to the grade and level of the street, and a corporation undertakes to alter the grade, and dig down the street, so as to materially impair the value of the erection, the corporation is liable for damages, notwithstanding the legislature has vested in the corporation the power so exercised, and although reasonable care was taken by the corporation to prevent injury.

"The Akron case recognizes a private right in a lot owner, to the use of a street abutting on his lot, where he has made erections with a view to the established grade of the street; and for which right, if materially invaded by a new grade, made under legislative authority, there exists a constitutional obligation to make compensation, so far as such right is materially injured or impaired."

And again, on page 469:

"Distinct from the right of the public to use a street, is the right and interest of the owners of lots adjacent. The latter have a peculiar interest in the street, which neither the local nor the general public can pretend to claim: a private right of the nature of an incorporated hereditament, legally attached to their contiguous grounds, and the erections thereon; an incidental title to certain facilities and franchises, assured to them by contracts and by law, and without which their property would be comparatively of little value. This easement, appendant to the lots, unlike any right of one lot owner in the lot of another, is as much property as the lot itself."

And on page 471:

"It is as positive and substantial an injury to private property, and as direct an invasion of private right, incident to a lot, as if the erections upon the lot were taken for public use. It comes not within the letter, but manifestly within the spirit of the provision of the constitution which requires compensation for property taken for public use."

And in Cincinnati & S. G. Street Ry. v. Cumminsville, 14 Ohio St., 523, the same doctrine is approved. I will not take time to read more than a short paragraph. After quoting from Crawford v. Delaware, *supra*, a part of which I have just read, this is added:

"Upon a doctrine so just and necessary, and resting upon foundations so solid and satisfactory, it can matter very little, that our conclusions are not concurred in by the courts of some of our sister states. It is, nevertheless, the law of this state, and no longer open to doubt or question."

But, it is contended by the city that the plaintiffs are estopped from raising this question, the precise language of the pleading upon that subject is:

"These defendants further say that the plaintiffs herein and each of them had knowledge that the said defendant, the city of Toledo, and its officers, were making said improvement upon the faith that the cost thereof including the awards for damages to the owners of abutting property and the expenses attending the same, was to be paid by the abutting property owners, and that an assessment for that purpose upon the said abutting property was contemplated by the said city of Toledo, and that all of the property abutting upon said Jackson street between the said points was especially benefited by the construction and making of said improvement over and above the benefits derived therefrom by the citizens of the city of Toledo generally; that said plaintiffs and each of them wholly failed to take any active means to prevent the construction of said improvement in pursuance of said petition and legislation, and wholly failed to apply to a court of competent jurisdiction to restrain the said city of Toledo, its officers and agents, from constructing said improvement, and wholly failed to object by any proper and sufficient manner or means to the making of such improvement at or before the time of the making of the same."

All this is denied by the reply, and the evidence upon the subject is not sufficient to satisfy us that these property owners were so far aware of the fact that the city was proceeding upon the faith of former decisions of the Supreme Court with respect to this law, as to be estopped from asserting this objection to the assessment. No special law or rule is invoked, as was the case in State v. Mitchell, 31 Ohio St., 592, and in Tone v. Columbus, 39 Ohio St., 281, in which cases it was held that parties who had been active in procuring the enactment of a law and then in procuring an improvement to be made in pursuance of the law, were estopped notwithstanding the law turned out to be unconstitutional.

The petitions produced here are under the general law. There is a single provision of that law that, under this recent decision of the Supreme Court, is held to be unconstitutional. The case is, on principle, we think more like the case of Birdseye v. Clyde, 61 Ohio St., 27 [55 N. E. Rep., 169], and we think the presumption should be indulged and is controlling, that what the parties asked for at the hands of the council was that they should proceed under valid laws and proceed according to law to make this improvement the assessment. The result of our views upon this branch of the case is, that there must be a re-assessment; this assessment must be set aside and a new one made under the statute, Secs. 2290 and 2291, Rev. Stat.

It is also objected that $34.50 added to the amount of the assessment for the use of a steam roller, should not have been added. It appears that the contractor agreed to do this work for a certain stipulated sum, and that the city agreed for a certain amount per day, to furnish a steam roller that he might use upon the work. It is said that this steam roller having been furnished by the city its use should be paid for out of the general fund; but, in our opinion, that was a part of the work that devolved upon the contractor; the city was not bound to do it; the city furnished this roller precisely as any private person being the owner of it, might furnish it for hire. The roller was actually furnished to the contractor for hire and this amount should not be deducted.

It is also objected that some parts of the fees of the mayor's clerk for the service of notices, is in excess of the amount allowed by law. In looking into the matter, we find $2.50 charged for notices served upon

McGlynn v. Toledo.

non-residents by letter, to which it does not appear that the mayor's clerk was entitled, and therefore it should be omitted. It there were nothing else in the case, we would probably pass it by and not order a re-assessment on account of this $2.50; but, since there must be a re-assessment, it may as well be included with the amount to be omitted.

The fourth and fifth objections are, that the whole assessment is invalid because the contract provided that the contractor should repair the street or keep the street in repair for a period of five years after it was finished, and that ten per cent. of the amount to be paid to him under the contract was withheld in order to enforce its completion and repair upon his part. It is said that that renders the whole assessment invalid for the reason that the repair of the street was not a part of the improvement petitioned for and that if it does not result in making the whole assessment invalid, at least this ten per cent. should be held not a proper part of the assessment, and that to that expense the assessment is invalid.

In support of this contention a number of authorities have been cited by counsel for the plaintiff, decisions of the courts of the states of Washington, California, Kentucky, Wisconsin, Oregon and the Supreme Court of New York, and the reasoning of the courts in which it is held that an assessment including a charge of this character is invalid, runs along in a line indicated by the extract that I shall read from the case of Boyd v. Milwaukee, 66 N. W. Rep.,603 [92 Wis., 456].

"Neither upon principle nor authority can such an assessment be supported where, as here, the corporate charter requires the expense of repairing streets to be paid out of general funds. It will not do to say that these agreements to repair are in effect but guaranties of material and workmanship. Such a contention is made here, and an affidavit was introduced showing that the life of such a pavement (if properly laid) was at least ten years, and that it would require no repairs at all for five years. If the agreements to repair were confined to repairs made necessary by defective workmanship or material, the argument would be entitled to serious consideration. But they go further. They cover in terms, everything that may happen to the pavement, except the cutting through it for the purpose of laying certain pipes. Just how far these agreements might go in case of damage to the pavement from unusual causes, it is not necessary to consider, nor is the question properly here. It is sufficient to say that it is very evident that no one in possession of good business sense will make such a contract without considering and charging for the very extended liability which he assumes of keeping the pavement in repair for five years, and thus the property owner is compelled to pay for that which the law charges upon the ward in general. We shall not strain the language of the contract or of the law for the sake of holding a special assessment of this nature valid. All such assessments are harsh proceedings at the best, and it is a salutary rule which holds the authorities making them quite strictly to the terms of the law."

In the case at bar the contract provides as follows:

Section B. "Said party of the second part further agrees that for the period of five years from the date of the acceptance by the common council, he will keep in good order and repair all the work done under this contract (excepting only such part or parts of the work as may have been disturbed, after the final acceptance of the same, by the laying and repairing of sewers, drains, gas, water, or service pipe, or other work

authorized by said common council), and that whenever directed by said common council, after notice to be served in either of the modes specified above in Clause A hereof, he will at once proceed to make the repairs as thus directed."

And Sec. C provides for the withholding of this ten per cent. for five years after the completion of the pavement, and the expenditure of so much of it as may be necessary for the making of these repairs if the contractor fails to make them, and it also provides that if he does his whole duty and it is not necessary to use this fund, he shall receive four per cent. upon it while it is withheld by the city.

Now we are of opinion that a fair construction of the contract would not require the contractor to do anything more in the way of repair on the street, or the keeping of it in repair, than to correct any defects of construction or materials; that is to say, make good any work that he may have done under his contract; that if, for instance, there were some such movement of the earth's crust, as might result from an earthquake, which should break this street all up, we do not think any court in christendom would hold that under the provisions of this contract the contractor would be required to make the street good.

There is another line of decisions holding the contrary view, and these decisions are found in Missouri, New Jersey, Illinois and Iowa, and the reasoning in these cases is, according to our view, more consistent, not only with the interests of the parties along the streets, who pay for these streets, but more consistent with the interests of the city. Too many restrictions and safeguards cannot be provided to require contractors to fulfil in a reasonable and honest manner their engagements in the making of these public improvements, and according to our view these stipulations as to the ten per cent. stand upon that ground; it is as if the contractor had been required to give a bond that he would keep the street in good condition for five years after having guaranteed that it would last five years. I read a paragraph from Barber Asphalt Paving Co. v. Ullman, 38 S. W. Rep. 458, 464, [137 Mo. 543], which is a Missouri case :

"The agreements of the plaintiff, the asphalt company, in regard to maintaining the street in repair for five years, free of cost to the city, apply only to 'the pavement constructed under these specifications.' If other repairs become necessary, on account of the construction of sewers, laying of pipes or other disturbances of the asphaltum street surface, under permits of the city, those repairs are to be paid for by the city, not by the adjacent property owners, at a price not to exceed the original cost per yard, according to the contract. The validity of those provisions as to the city is a topic regarding which we shall more fully state our position in the next paragraph of this opinion. It is enough at the moment to say that the stipulations as to such repairs on account of the city, at prices to be paid in future, do not appear to impose on the property owners any charge for such repairs as part of the primary cost of the asphaltum street. The guaranty of the pavement for five years, as laid by the plaintiff, involves no extra charge against the adjoining property, further than would be justly payable for a lasting pavement. The term for keeping the agreed work in repair free of cost is no longer than the reasonable period such a work should last if properly done at the outset."

McGlynn v. Toledo.

And that is so here. According to the evidence, if this pavement were laid in a reasonable manner, as provided for in the contract, it would last five years.

"It certainly is proper for the city to require of the contractor for such improvements a sound and durable piece of finished work. The agreement to maintain the work free of cost for five years is, so far as this record shows, nothing more than a guaranty that the work shall be of that character.

"The learned dissenting members of the court consider that the contract imposes upon the taxable property some part of the after repairs, payable properly by the city. They have quoted some part of the contract to support their views. The passages from which the quotations are taken appear at large in the statement accompanying this opinion, as well as considerable context, which, also, should not be lost sight of. The paramount issue is upon the construction of the contract taken as a whole. Does it mean to provide that the paving company shall keep the entire street in repair for five years, or does it mean to provide that the company shall simply maintain, in good order, for that period, the street as plaintiff agreed it should be made? We think the latter is the true meaning. The city had the right to determine whether the thoroughfare should be improved with macadam, gravel, asphaltum, granite or other material. It had the right to put down a pavement good enough to last at least five years, and to charge its cost against the adjacent property. Now, what difference is there in principle, between a municipal agreement that merely calls for the construction of such a substantial street, and a municipal agreement which adds to such a call terms requiring the contractor to make good, during five years, his contract to furnish the sort of pavement he proposes to supply? The proper laying of pavements of the sort here in view is a matter of skill, which few but experts can fathom. An agreement to keep such a pavement good for five years, as contracted to be laid, seems to us a far more practical and efficient way of clinching the agreement for a sound article than any amount of stipulations to govern the mere construction of the street at the outset. Such a guaranty as it is aptly termed in the contract, is a prudent and business-like mode of securing what the city had a right to demand in respect of the quality of work desired. Such an agreement does not, of itself, necessarily imply an unlawful increase of the first cost of a well constructed street Such a street is what the contract before us is designed to secure. The guaranty is entirely different in principle from an agreement to keep the whole street in repair for a term of years, irrespective of the causes which might necessitate repairs."

And, following the decisions of the courts of Missouri, New Jersey, Illinois and Iowa upon this subject, we hold that there is nothing in this stipulation as to the withholding of the ten per cent., nothing in the transaction, that renders this assessment invalid.

It is also urged that there is a substantial defect in this work, in this, that all of that part of the street where the sidewalks should be laid was not brought up to grade, and much authority is cited in support of the contention that under this petition and contract, the contractor should have been required to build the necessary retaining walls and fill in so as to bring the street for its full width to the line of the lots, up to grade. Without stopping to consider whether or not this was required under the contract, we have simply to say that in our opinion

this matter cannot be taken advantage of in an attack upon the assessment, unless fraud is alleged ; we understand that it has been so held by this court and other courts over and over again. In Stone v. Viele, 38 Ohio St., 314, to which we have been referred, it was held that where there was a substantial defect, that would render the assessment invalid. But when that case was before the court and when the improvement was petitioned for and constructed, the statute upon the subject was very different from the statute under which *this* improvement was made.

Judge Okey, in delivering the opinion, on page 317, says this :
" Section 550 of the municipal code of 1869, as amended in the revision (Rev. Stat., Sec. 2289), provides that in an action by the city (Rev. Stat., Secs. 2286, 2294, 2303), to enforce an assessment, ' a substantial defect in the construction of the improvement and shall be a complete defense.' "

After that was said section 2289, was amended, and in the amendment these words " a substantial defect in the construction of the improvement shall be a complete defense " are omitted.

Our attention is also called to a more recent decision of the Supreme Court, from which it is claimed that there is an implication that the right to attack the assessment upon this ground still exists, but we think the inference to be drawn from this amendment following this decision is so clear and unmistakable as to leave no doubt of the legislative intent, that an assessment should not be attacked or defended against upon that ground. I might say, however, that we are not satisfied that the contract was not fairly and fully performed.

I have indicated the only parts of the assessments that we think should be omitted from the new assessment and the decree will be entered in accordance with the views expressed.