LOEWENBACH, Respondent, vs. CITY OF MILWAUKEE and another, imp., Appellants.

*January 29—April 20, 1909.*

*Municipal corporations: Special assessments: Street improvements: Milwaukee charter construed: "Paving" includes repaving: Property assessable: Arbitrary assessment.*

1. Under sec. 2, ch. 7, of the charter of Milwaukee, as amended by sec. 6, ch. 310, Laws of 1893 (sec. 959—35, Stats. 1898), and sec. 6 of said ch. 7, if the board of public works and the city council proceed regularly in the manner prescribed they have authority to order a street paved or repaved without a petition from the owners of the abutting property, and have the right to assess the cost thereof (within the prescribed limit of $3 per square yard for both original and subsequent construction) against such property to the extent of the benefits conferred.

2. The word "paving" in said sec. 6 of ch. 7 of the charter is not restricted in meaning to original construction, but includes repaving.

3. Under said sec. 6 of ch. 7 of the charter (since the enactment of ch. 310, Laws of 1893), after the limit of $3 per square yard has been reached, either for original or subsequent cost of street paving, so that owners of abutting property are no longer liable to special assessment, they may, if the majority so wills, secure a more expensive pavement than the city proposes to construct by defraying the increased cost.

4. Where the east forty-six feet of four lots as platted had been conveyed and assessed as a single parcel of land and constituted a homestead, such portions of the lots constituted for practical purposes a single lot fronting on the east and west street and were properly assessed as such for the paving of that street although only one of the lots as platted abutted thereon.

5. In making an assessment of benefits and damages from a street improvement a board of public works should ascertain what such benefits and damages amount to on each parcel of land, instead of assuming that the benefits are equal to the cost of doing the work.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

This action is brought to set aside a special assessment made to cover the cost of a second paving of a portion of State street in the city of *Milwaukee*. The new pavement constructed was of a permanent character and was laid on a concrete foundation. The expense of the former pavement was paid by the abutting lotowners. The circuit court held that the expense should be paid out of the ward fund, and set the assessment aside because the city council had no authority to order the work done at the expense of the abutting lotowners, in the absence of a petition by residents of said city owning more than one half of the frontage on the portion of the street proposed to be paved. The court further held that the board of public works proceeded in an arbitrary manner in making the assessment, and permanently enjoined the collection of the certificate issued against plaintiff's lot on account thereof. The court found as a matter of fact that the benefits accruing to abutting property were, as to each lot, in excess of the charge made against the same to cover the cost of the work, and that it was necessary to do the work ordered.

For the appellants there was a brief by *John T. Kelly*, city attorney, and *Clinton G. Price*, first assistant city attorney, of counsel, and oral argument by *Mr. Price*.

*C. H. Hamilton*, for the respondent.

The following opinion was filed February 16, 1909:

Barnes, J.   Sec. 2, ch. 7, of the charter of the city of *Milwaukee* provides that the paving of any street shall be chargeable to and payable by the lots fronting upon such street to the amount which such paving shall be adjudged by the board of public works to be a benefit to such lots. This section of the charter further provides that, after a street has been paved in compliance with the order of the proper officers, the expense of renewing, repaving, and keeping the same in repair, and of any other subsequent improvement, shall be paid out of the ward fund of the ward in which the

improvement is made.  A former pavement having been placed in the streets at the expense of the abutting owners, the section of the charter referred to, if unmodified by any other provision of law, would preclude the city from charging the cost of repaving against the lots adjacent to and fronting on the improvement.

Sec. 6, ch. 310, Laws of 1893 (sec. 959—35, Stats. 1898), provides, in substance, that no property fronting on any street shall be exempt from any assessment of benefits on account of paving such streets with a permanent pavement having a concrete foundation until the owners of such property shall have paid in the aggregate in assessments for pavements in front thereof $3 per square yard for the part of the street lying between the curb and the center line of the street and directly in front thereof.  Where property owners have paid less, the property is made liable for the difference between the amount paid and the $3 per square yard limit.

In *Boyd v. Milwaukee,* 92 Wis. 456, 66 N. W. 603, this court held that the law of 1893 operated as an amendment to the charter of the city of *Milwaukee,* and that the cost of a repavement might be charged against abutting property thereunder, regardless of the fact that a former assessment had been made against such property to defray the cost of a pavement, provided the aggregate amount of the charges on account of such paving did not exceed the aforesaid limit of $3 per square yard, and provided, further, that the assessment did not exceed the benefits.

The substantial question in dispute between the parties is very narrow in its limits.   It is contended by the respondent that there is no authority conferred upon the city to make the assessment in controversy in the absence of a petition signed by residents of the city and owning to exceed one half the frontage on the portion of the street intended to be improved. It is conceded that no such petition was presented.   The appellants urge that the city council had the power to order the

improvement made at the expense of the abutting property
owners upon the initiative of the board of public works and
without petition.   The law governing the mode of procedure
is sec. 6, ch. 7, of the city charter.   It provides that, when-
ever the board of public works deems it necessary to grade or
otherwise improve any street, it shall make an estimate of the
cost of the proposed improvement and place it on file for in-
spection.   The board must make such recommendation in
reference thereto as it deems proper, and, upon its report be-
ing adopted by the common council, it may order the work
done.   No work chargeable to lots fronting on the same, "ex-
cept the . . . paving of streets . . . shall be ordered . . .
unless a petition therefor shall be presented to the common
council, signed by residents of said city owning a majority
of the feet in front of all the lots fronting upon such proposed
improvements. . . . The common council may order the
. . . paving of streets . . . without such petition."   The
law then prescribes the method to be followed in the event of
the city proceeding to make the improvement without peti-
tion.

Under sec. 2, ch. 7, of the charter, as amended by the law
of 1893, the cost of paving and of repaving is chargeable
against the abutting property until the limit of $3 per square
yard is reached.   Sec. 6, ch. 7, of the charter expressly au-
thorizes the board of public works, in conjunction with the
city council, to pave a street without a petition, provided the
proceedings in reference thereto are carried on in the manner
prescribed.   These two sections must be read together in con-
struing the law and in determining the rights of the parties.
There can be little doubt that, if the board of public works
and the city council proceeded regularly, they have authority
to order a street paved without a petition from the property
owners, and have the right to assess the cost thereof, within
the prescribed limit, to the extent of the benefits conferred,
against abutting property.   It is argued, however, that there

is an essential difference between "paving" and "repaving," and that, while the city may proceed against the lotowners without petition to defray the cost of an original pavement, it may not do so as to subsequent construction. This we apprehend to be the real question at issue between the parties, although it is not very clearly elaborated in the briefs filed.

In its ordinary sense the word "paving" is just as applicable to a second or a third construction as it is to the first one. Whenever a new pavement is laid on a street there is a "paving" of such street regardless of whether it has been paved before; and unless there is some clear differentiation between the use of the word "paving" and the word "repaving," as found in the charter, there is little warrant for restricting the meaning of the former word to original construction. Under a law authorizing the city of Philadelphia to order paving done at the expense of the adjacent property owners it was held that such law implied a power to repair and repave at their expense when the condition of the street required it. *Wistar v. Philadelphia,* 80 Pa. St. 505, 511. We fail to find any language in sec. 6 that would warrant the court in holding that the word "paving," as used therein, should have the restricted meaning which it would be necessary to give it in order to uphold the contention of respondent's counsel. In the instant case a substantial brick pavement was laid on a concrete foundation, and it would be more than paradoxical to say that the street was not paved within the meaning of sec. 6 because a block pavement was laid thereon at some prior time.

Said sec. 6 also provides

"that whenever the board of public works shall deem it necessary to pave . . . any street, . . . after the same has been once constructed to the grade established . . . and paved, . . . the expense of repaving whereof, shall be a lawful and proper charge against the funds of the ward, in which such street . . . is situated, and a majority of the residents of said city of *Milwaukee,* owning a majority of the feet in

front of all the lots, fronting on such proposed improvement,. owned by residents of such city, shall file a petition with said board, for any pavement . . . deemed by said board to cost more than the estimate made by the board, of the cost of improving said street, . . . it shall be the duty of said board and of the common council to grant the request of such petition, and to proceed to repave . . . said street, . . . according to the prayer of said petition; . . . provided, however, that all cost and expense of such repavement, . . . in excess of the estimated cost of such work, . . . shall be chargeable to, and be made payable by, the lots fronting or abutting upon such street."

Both secs. 2 and 6 were passed prior to the enactment of ch. 310, Laws of 1893, and under them the cost of second or subsequent paving was not chargeable against abutting property. The authority of the city was enlarged, however, by the law of 1893 in the manner before stated. The expense of repaving is chargeable to the abutting property within the limit fixed by that law. The last quoted provision of sec. 6, as the law now stands, means that after the $3 limit has been reached, either in original or subsequent cost of street paving, so that abutting property owners are no longer liable to special assessment, they may, if the majority so wills, secure a more expensive pavement than the city proposes to construct by defraying the increased cost. We conclude on this branch of the case that the court erred in holding that the plaintiff's property was not subject to assessment on account of benefits conferred, it being conceded that the amounts assessed against the property for the former and present pavements did not exceed the limit fixed by ch. 310, Laws of 1893.

The record in the case leaves us much in doubt as to what disposition should be made of it. The findings are prepared, largely at least, with reference to the idea that it was not within the power of the common council to make a special assessment against the abutting property so long as the improvement was not requested by petition. There are some matters of fact found by the court, however, which indicate

that the court believed from the evidence that the assessment of benefits and damages as made was unequal, arbitrary, inequitable, and illegal, assuming that the right to make an assessment existed. To just what extent such findings are predicated on the fact that the assessment was made against a portion of several lots as platted, while but one of them abutted on the improved street, we do not know. The proof showed that the east forty-six feet of lots 14, 15, 16, and 17 had been conveyed and assessed as a single parcel of land and constituted the homestead of the plaintiff. Only lot 17 abutted on State street. We entertain no doubt that the portion of the lots in question, by reason of their subdivision, for practical purposes constituted . a single lot fronting on State street and were properly assessed as such. The court also found that the rule pursued by the board of public works in making the assessment of benefits and damages was to estimate the cost of the work and add to such estimated cost an amount sufficiently large to cover any variation in such cost, and that the assessment was made to cover such cost. It was of course incumbent upon the board to ascertain what the benefits and damages amounted to on each parcel of land, instead of assuming that the benefits were equal to the cost of doing the work. Furthermore, the court found that the board did not make its assessment within view of the premises, but made the same at its office eight days later, and that it was physically impossible to make the inspection of about eighty parcels of land from actual view within the twenty-five minutes devoted by the board to physical inspection. The court found as a conclusion of law that, in addition to the assessment of benefits and damages being void because there was no power to make it, it was also void because it was not made "in the manner and according to the rules laid down in the charter of the defendant city, but that the board of public works substituted a rule of its own in making the same." On the other hand, the court, on its own motion,

after the findings in the case were signed, made a supplemental finding to the effect that all of the abutting property affected by the assessment "has been enhanced in value by reason of the making of said improvement from five to ten dollars per front foot, and the property of the plaintiff has been enhanced at least five dollars per front foot." The assessment against plaintiff's property amounted to a little less than $5 per front foot.

The facts found in support of the legal conclusion, that the assessment was unlawfully made, are meager. The appellants in their brief admit that there is evidence in the record to support the finding of the court, but insist that such finding is against the preponderance of the evidence. An examination of the evidence convinces us that there is sufficient testimony to support such findings of fact as are made in reference to the arbitrary character of the assessment. We conclude, on the whole, that the trial court should have stayed proceedings and ordered a reassessment in the action, as provided in sec. 1210d, Stats. (1898).

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for further proceedings according to law.

A motion for a rehearing was denied April 20, 1909.