Burnham vs. City of Milwaukee and others.

BURNHAM, Respondent, vs. CITY OF MILWAUKEE and others, Appellants.

November 23 — December 10, 1897.

*Municipal corporations: Constitutional law: Limitation of indebtedness: "Debt:" Special legislation amending charter.*

1. Unpaid instalments upon contracts for the purchase of park lands made pursuant to sec. 13, ch. 488, Laws of 1889, and sec. 8, ch. 179, Laws of 1891 (authorizing the city of Milwaukee to purchase lands for park purposes upon credit, and providing that "for that purpose the proper officers of said city may execute and deliver to the vendor of such land or property purchased, an instrument creating a lien thereon for such purchase money, without creating any corporate liabilities therefor, to secure the whole or any part of the price in instalments"), do not constitute corporate indebtedness within the meaning of sec. 3, art. XI, Const., restricting the power of cities to contract debts. PINNEY and NEWMAN, JJ., dissent.

2. The provision of the laws under which such contracts were made, that no corporate liability should be created, has controlling effect over provisions in the contracts in effect promising to pay the deferred instalments.

3. Ch. 288, Laws of 1897, authorizes the erection of garbage reducing works in cities of the first class and the issue of bonds in payment therefor, and provides that all such bonds issued shall be issued, used, and disposed of in accordance with the provisions of ch. 311, Laws of 1893. Sec. 2 of said ch. 311 provides that no bonds shall be issued under it unless authorized by a vote of three fourths of the common council. Ch. 380, Laws of 1897, amendatory of ch. 288, provides that the common council of any city of the first class, *during the year 1897*, may issue corporate bonds, not exceeding a certain amount, for the purpose of erecting garbage reducing works, providing such issue shall be authorized by a vote of the majority of the members of the common council elect. The city of Milwaukee was the only city of the first class in the state, and no other could possibly come into that class during the year 1897. *Held*, that said amendment was special legislation amending the charter of Milwaukee, and was therefore within the inhibition of subd. 9, sec. 31, art. IV, Const.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

The facts are stated in the opinion.

*Howard Van Wyck,* city attorney, and *Ernest Bruncken,* assistant city attorney, for the appellants.

For the respondent there was a brief by *Timlin & Glicksman,* and oral argument by *W. H. Timlin.* To the point that the park land contracts constitute an indebtedness of the city, they cited *Earles v. Wells,* 94 Wis. 285, and cases cited; *Lake Co. v. Graham,* 130 U. S. 674; *Baltimore v. Gill,* 31 Md. 375; *Ironwood Water Works Co. v. Trebilcock,* 99 Mich. 454; *Brown v. Corry,* 175 Pa. St. 528; *Newell v. People ex rel. Phelps,* 7 N. Y. 9; *La Porte v. Gamewell Fire Alarm Tel. Co.* 45 N. E. Rep. 588, and cases cited; *Culbertson v. Fulton,* 127 Ill. 30; *Spilman v. Parkersburg,* 35 W. Va. 605; *Orvis v. Park Comm'rs,* 45 Am. St. Rep. 252, and note; *Beard v. Hopkinsville,* 23 L. R. A. 402.

WINSLOW, J. This is an action in equity brought by a citizen and taxpayer of the city of *Milwaukee* to restrain the city from issuing $120,000 worth of corporate bonds for the purpose of building and equipping a garbage reduction plant, under the provisions of ch. 288, Laws of 1897, as amended by ch. 380, Laws of 1897. It will be unnecessary to state the pleadings, as the questions on which the case turns can be briefly stated. The plaintiff's principal claims were: (1) That the city had already exceeded its constitutional limit of indebtedness; and (2) that the act authorizing the issue of the bonds was special legislation, and hence unconstitutional, under the provisions of subd. 9, sec. 31, art. IV, Const., which prohibits the passage of any special law for "incorporating any city, town or village, or to amend the charter thereof." Upon motion of the plaintiff, judgment perpetually enjoining the city from issuing the bonds was

rendered upon the complaint and answer, and the city appeals.

1. Does the corporate indebtedness already exceed five per cent. of its taxable property? The answer to this question depends upon the proper legal construction of certain contracts for the purchase of lands for public parks entered into by the city during the years 1890 and 1891, under the provisions of sec. 13, ch. 488, Laws of 1889, and sec. 8, ch. 179, Laws of 1891. There are fifteen of these park contracts. The city is in possession of the lands named in these contracts, and is improving the same. There have already been paid large sums of money upon the contracts, and there yet remain to be paid more than $600,000, before the entire purchase price of the lands will be paid. If this amount is an indebtedness of the city, then its constitutional limit of indebtedness (Const. art. XI, sec. 3) has already been exceeded; otherwise not. Both of the laws under which these purchases of park lands were made grant the city power to purchase lands upon credit, and then provide that "for that purpose the proper officers of said city may execute and deliver to the vendor of such land or property purchased, an instrument creating a lien thereon . . . for such purchase money, without creating any corporate liabilities therefor, to secure the whole or any part of the price in instalments," etc. Laws of 1889, ch. 488, sec. 13, and Laws of 1891, ch. 179, sec. 8.

Certain of these very contracts were before this court for construction in the cases of *Perrigo v. Milwaukee*, 92 Wis. 236, and *Milwaukee v. Milwaukee Co.* 95 Wis. 424, and the substance of the contracts will be found stated in those cases. In the first of these cases the question was whether such a contract, in the hands of the vendor of the land, was personal property, so as to be subject to taxation, or, in other words, whether it was a *debt due or to become due* or an

*effect;* and it was said by the present chief justice in the opinion: "Does this optional agreement held by the city create a debt against the city and in favor of the Perrigos? Certainly not, since, as indicated, it expressly provides that the city shall not thereby be made liable in any manner or form. . . . But the Perrigos are not creditors having a right to an indebtedness against the city which they can enforce by action or otherwise. The further payment by the city of any portion of the purchase price or interest or taxes is entirely optional with the city." Thus it appears to have been distinctly held in that case, after full argument, that the instalments to come due in the future upon such contracts were not debts due from the city to the vendors, but that it was optional with the city whether it would pay them or not.

The question arose again, in a somewhat different form, in the subsequent case of *Milwaukee v. Milwaukee Co.* 95 Wis. 424. Part of this property, at least, was outside of the city limits, and the question arose whether it was exempt from taxation by the county because it was owned by the city. In this case it was held that the legal title to the land was in the vendors, and that the city simply had an option to purchase the same, with the right of possession until default, and that the city was not bound to pay the purchase money; thus distinguishing the case from that of a vendee in possession of lands under a contract binding him to pay the purchase money. Thus it will be seen that the very question whether the future instalments coming due upon these contracts constituted debts or obligations on the part of the city arose distinctly in each of these cases, and was in each case distinctly decided adversely to the plaintiff's contention.

It was very ably contended on behalf of the plaintiff upon the argument that the question arises differently now, and that the decisions in those earlier cases are not necessarily

Burnham vs. City of Milwaukee and others.

controlling in this case; that in those cases the question was one of construction of the laws regulating taxation, while now the question concerns the interpretation of an important clause of the constitution.  It is said that these contracts constitute simply a scheme on the part of the parties to evade the constitutional limitation upon municipal indebtedness, and that such a scheme should not be allowed to succeed; that even if there be no debt created by these contracts, in the ordinary signification of the term, still there is such an inchoate obligation that manifestly the city, from mere prudential reasons, will feel bound to make the payments in order to save the property; and thus that the very abuse which the constitution aims to prevent is successfully perpetrated.

We are not unmindful of the weight and persuasiveness of these considerations.  Probably there is little chance for a difference of opinion as to the policy of such legislation or of such contracts as those before us; but we cannot twist nor enlarge language in a statute, or even in the constitution, which has a definite and certain legal meaning, even to accomplish laudable results.  There is no doubt of the meaning of the word " debt " as used in the law.  It means "something owed;" "money due or to become due upon express or implied agreement." 1 Bouv. Law Dict. tit. " DEBT." It denotes, not only an obligation of the debtor to pay, but the right of the creditor to receive and enforce payment. *Board of Comm'rs of Monroe Co. v. Harrell* (Ind. Sup.), 46 N. E. Rep. 124.  Under the constitution as well as under the law of taxation, the question is, Is the city indebted?  Is it under obligation to pay to some one the balance of the purchase price of these lands?  It will not do to say that it will probably make the payments, or that it would be foolish not to do so, but we must be able to say that it has contracted, either expressly or impliedly, to do so.  This is precisely the same question which arose in the

other cases above referred to, and in which we decided that there was no debt or legal obligation, and it would seem like juggling with plain words to say now that there is a debt or legal obligation.

We are cited to cases holding, in effect, that a borrowing of money upon a pledge of existing public property, or a charge upon the public revenue, constitutes a debt, within the meaning of such an inhibition as the one here involved, although no promise of payment is in terms made. *Baltimore v. Gill*, 31 Md. 375; *Newell v. People ex rel. Phelps*, 7 N. Y. 9–87. The reasoning on which these decisions rest is that it is a manifest evasion of the law, and that the lender has power to demand and collect the entire amount loaned out of the corporate property; that, while there may be no promise to pay by the corporation, there is a power to enforce *out of the corporate property* by reason of the pledge or hypothecation thereof. Thus it is construed to be a debt because the payment of the amount due may be enforced out of the city funds or property. Such is not the case here. Under these contracts the city acquires no title to the lands covered by the contracts until it pays all the instalments. It may stop such payment at any time, and none of its property can be sold to pay the remaining instalments. The case is somewhat similar to the case of *Stedman v. Berlin*, 97 Wis. 505, where the city, by ordinance granting franchise to a waterworks company, reserved an option to purchase at a specified price, within a specified time; in that case it was held that the stipulation for an option did not constitute an indebtedness within the meaning of the constitution, because it might decline to purchase and thus end the whole matter. So, here, all the future payments are optional with the city. It is not like the case of *Earles v. Wells*, 94 Wis. 285, where there was an agreement to purchase by instalments under the guise of water rental, and which was held to be manifestly an obligation in excess of the constitutional limit. There is

a class of recent cases much like that of *Earles v. Wells*, and which are cited in the opinion in that case, which reach the same general conclusions, but they manifestly do not in any way affect this case. *Brown v. Corry*, 175 Pa. St. 528. The case which approaches nearest to supporting plaintiff's contention is that of *Ironwood Water Works Co. v. Trebilcock*, 99 Mich. 454, where it was held that a city could not buy an equity of redemption in a waterworks plant subject to a mortgage thereon, which mortgage, if added to the already existing corporate debt, would exceed the constitutional limit. The conclusion is partly based upon the Maryland case of *Baltimore v. Gill*, *supra*, and on the same line of reasoning. We have before indicated wherein that line of reasoning seems to us inapplicable to the present case, and we must decline to follow it, especially in view of the fact that we have already twice construed these very contracts adversely to the views of the Michigan court. See *Kelly v. Minneapolis*, 63 Minn. 125.

The contracts in question are not all worded alike. Some of them contain express provisions that there shall be no corporate liability on the part of the city; others do not contain these provisions, nor do they contain any promise to pay by the city; while still others contain a formal promise to pay by the city. All the contracts, however, were made under the provisions of the laws of 1889 and 1891, authorizing purchases of park lands on credit, before mentioned, and we do not understand that the city had power to make such purchases, except as given by these laws. Upon familiar principles, the provisions of the laws granting the power entered into the various contracts, and must control them, and these laws provide, in substance, that no corporate liabilities shall be created. Hence all the contracts are governed by the same rule. Our conclusion is that the unpaid instalments upon the park land contracts do not constitute corporate indebtedness within the meaning of the

constitution, because the payment thereof is entirely optional on the part of the city.

2. The bonds in question are proposed to be issued under the provisions of ch. 288, Laws of 1897, as amended by ch. 380 of the laws of the same year. The first of these laws provides for the erection of garbage reducing works in the cities of the first class, and sec. 3 thereof authorizes the issuance of bonds for such purposes, and provides that all such bonds *issued* shall be *issued*, used, and disposed of in accordance with the provisions of ch. 311, Laws of 1893. Turning to this act, we find, by sec. 2 thereof, that no bonds can be issued under it save when authorized by vote of three fourths of the members of the common council elect. By ch. 380, however, sec. 3, ch. 288, is amended and revised plainly for the purpose, among others, of avoiding the necessity of a three-fourths vote of the common council. By the provisions of the new section, the common council of any city of the first class is authorized, *during the year 1897*, to issue corporate bonds, not exceeding $120,000, for the purpose of erecting garbage reducing works, providing such issue shall be authorized by a vote of the majority of the members of the common council elect. That this act, when so amended, is special legislation amending the charter of the city of *Milwaukee*, and thus within the inhibition of subd. 9, sec. 31, art. IV, Const., is plain from a mere reading of the acts and reference to the principles laid down in *Johnson v. Milwaukee*, 88 Wis. 383, and *Boyd v. Milwaukee*, 92 Wis. 456. *Milwaukee* is the only city to which the act can possibly apply. It is the only city of the first class, i. e. having a population of 150,000 and over. No other city can come into that class during the year 1897, or before the taking of the next census in 1900. Laws of 1895, ch. 238. It could be no more certain that the act applied to *Milwaukee* alone if it had been so expressed in words. The case is plainly ruled in this respect by *Boyd v. Milwaukee, supra*. The ordinance

which authorized the bonds was passed by a majority vote of the common council, but not by a three-fourths vote. The law purporting to authorize their issuance upon a mere majority vote is unconstitutional and void; hence the bonds cannot be rightfully issued.

The judgment of the superior court was right and must be affirmed.

*By the Court.*— Judgment affirmed.

PINNEY and NEWMAN, JJ., dissent from that portion of the foregoing opinion which holds that the unpaid instalments on the contracts in question did not constitute corporate indebtedness within the meaning of sec. 3, art. XI, Const.