Schaettle, Respondent, vs. State Highway Commission and others, Appellants.

*December 11, 1936—January 12, 1937.*

For the appellants there was a brief by the *Attorney General* and *Warren H. Resh,* assistant attorney general, attorneys for the State Highway Commission, and *William Stevenson,* district attorney of La Crosse county, attorney for La Crosse county and others, and oral argument by *Mr. Stevenson, Mr. Resh,* and *Mr. G. C. Berteau,* law examiner.

For the respondent there were briefs by *Higbee & Higbee* of La Crosse, and oral argument by *Jesse E. Higbee.*

NELSON, J. The complaint is long and meticulously drawn. It alleges in substance that the plaintiff is a taxpayer of La Crosse county and brings the action in his own behalf and in behalf of all other citizens and taxpayers of said county; that the defendant State Highway Commission is an administrative board exercising the powers prescribed by ch. 82, Stats.; that La Crosse county is a duly created and existing political subdivision of this state, having certain definitely described boundaries; that Richard W. Davis and Esther Domke are the chairman of the board of supervisors and the county clerk, respectively, of La Crosse county; that prior to the year 1917, the west boundary line of La Crosse county was the center of the main channel of the Mississippi river, but in the year 1917, by appropriate acts of the congress of the United States, the legislature of the state of Minnesota and the legislature of this state, Baron's island, situated on the west side of the main channel of the Mississippi river was ceded by the state of Minnesota to the state of Wisconsin in exchange for other territory duly ceded by this state to the state of Minnesota; that after Baron's island was ceded to the state of Wisconsin, it became a part of La Crosse county and was duly annexed to the city of La Crosse; that in the year 1890 the city of La Crosse, at municipal expense, erected a vehicular bridge across the main channel of the Mississippi river; that the highway upon

which the said bridge was situated became a much traveled and important artery of commerce and trade; that in the year 1930, in pursuance of the statute, the State Highway Commission formally took over, adopted, and assumed the exclusive maintenance, control, and operation of said bridge; that in the year 1932, the Highway Commissions of this state and the state of Minnesota, acting jointly, and in pursuance of appropriate statutes, at joint expense and with federal aid, constructed a substantial and modern bridge across the west channel of the Mississippi river; that in August, 1935, a portion of the old bridge across the main channel of the Mississippi river collapsed necessitating its temporary repair; that the old bridge across the main channel of the Mississippi river had been formally adopted as a part of state and federal trunk highways Nos. 14, 16, and 61, leading from this state to the state of Minnesota; that public safety, convenience, and necessity imperatively demand the prompt replacement of the old bridge with an adequate bridge of modern design to accommodate the steadily increasing traffic; that on February 20, 1936, the board of supervisors of La Crosse county adopted a resolution, wherein and whereby La Crosse county declared that it desired the reconstruction of a bridge as a part of the state trunk highway system and of the said United States highways over the Mississippi river at the most feasible point of crossing at the city of La Crosse; that said proposed reconstruction is necessary, and that said project is eligible under the provisions of sec. 87.02, Stats., and wherein and whereby it petitioned the State Highway Commission to hold the necessary hearings required by law and to allocate funds for such project pursuant to the provisions of sec. 20.49 (5), Stats.; that in pursuance of said resolution and petition, the Highway Commission held a public hearing at the city of La Crosse; that the commissioner who conducted said hearing announced at

the conclusion thereof that necessity existed for the construction of said bridge, but that the question of financing it would have to be held open for future determination; that thereafter and pursuant to surveys conducted by the Highway Commission in conjunction with the bureau of public roads of the United States department of agriculture and the war department of the United States, the type and character and the specifications for said proposed new bridge were determined; that on July 7, 1936, the Highway Commission made and entered its final determination in the matter of the petition of La Crosse county and thereby found and determined, (1) that the best interests of the state would be served by constructing a new bridge, commencing at a point on a certain street in the city of La Crosse, and with funds available under sec. 20.49 (9), Stats., supplemented by federal aid and contributions from both the city of La Crosse and La Crosse county; that the preparation of surveys, plans, estimates, etc., should proceed; that $100,000 of state funds be allotted for financing the state's share of the first unit of construction and that, in view of the determination to proceed with the construction of such bridge by financing the state's share thereof under sec. 20.49 (9), the petition of La Crosse county for construction of said project under sec. 87.02 and financing the same under sec. 20.49 (5) should be denied; that in pursuance of such determination the Highway Commission, on August 11, 1936, formally certified that the contribution of said county should be in an amount not to exceed $200,000; that the contribution of the city of La Crosse should not exceed $100,000, and that the balance of the expense of said project should be financed with $200,000 to be provided by the 1937 federal aid allotment to this state, $300,000 by special federal grade crossing appropriation and $400,000 from state funds; that the commission further certified that the total length of the bridge

would be approximately two thousand five hundred thirty feet; that the Highway Commission demanded that La Crosse county provide for such project the sum of $184,000, and pay the same into the treasury of the state of Wisconsin; that in pursuance of the demand of the Highway Commission, the board of supervisors of La Crosse county, at a special meeting held on May 21, 1936, passed a resolution by a vote of thirty-six ayes to two noes, authorizing the issue of $184,000 of series B bonds in aid of said bridge project; that thereafter the county board of La Crosse county adopted by a unanimous vote a supplementary resolution authorizing the issue of said bonds; that the Highway Commission thereafter approved a form of bond to be issued by La Crosse county; that the proposed bridge will span the main channel of the Mississippi river, which is wholly within the state of Wisconsin; that no referendum election has been held on the question of issuing said bonds nor is any such election proposed to be held; that the chairman of the county board of supervisors, the county clerk, and the county highway commission of La Crosse county, have advertised for and received bids for the bonds proposed to be issued and a certain bid accepted; that the said officers now propose to issue said bonds in the name of and as a general obligation of La Crosse county in furtherance of the purpose of the resolutions so adopted by the board of supervisors notwithstanding the provisions and prohibitions of sec. 67.04, 67.04 (1) (d), and notwithstanding the prohibition of sec. 87.02 (5) (b), Stats.

It appears from the allegations of the complaint, and from the resolution of the board of supervisors of La Crosse county and the records of the Highway Commission, annexed thereto and made a part thereof, that the proceedings for the construction of the bridge project in question were initiated by La Crosse county in pursuance of sec. 87.02, and

that the Highway Commission denied the petition of La Crosse county for the construction of the proposed bridge under sec. 87.02 and for the financing thereof under sec. 20.49 (5). Whether the Highway Commission, upon the filing of a petition by a county, praying for the construction of a bridge under the provisions of sec. 87.02 (1) (b) may deny the same and then on its own motion proceed to act under other sections of the statutes without first requiring the presentation of another petition or an amendment of the first petition, we need not presently determine. We are not concerned here with the authority of the Highway Commission, but with the authority of La Crosse county to issue bonds for the purpose of obtaining funds with which to make a contribution in aid of the proposed bridge project.

The questions for determination are: (1) May the proposed bridge be constructed pursuant to either the provisions of sec. 87.02 (1) (b) or sec. 83.03 (6)? May La Crosse county pay a portion of the cost thereof?

Sec. 87.02, so far as here material, provides:

"(1) . . . The following classes of bridge projects located wholly within the state shall be eligible to construction under the provisions of this section: . . .

"(b) Any bridge project located on the state trunk highway system or on a street in a fourth class city, not a portion of the state trunk highway system, but selected by the state highway commission as a direct connection between portions of such system, in which the bridge portion necessarily must be three hundred feet or more in length not including approaches, or in which the cost of the bridge portion as estimated by the state highway commission in its finding and determination is seventy-five thousand dollars or more, or in which there must be provided a movable span to permit navigation.

"(2) *Initiation of proceedings.* Proceedings for the construction of bridge projects under this section shall be initiated by a petition filed with the state highway commission. Such petition shall state that the petitioners desire

such construction, and the approximate location thereof; that the proposed construction is necessary, and that the project to be constructed is eligible under the provisions of this section, in the opinion of the petitioners. Such petition may be filed . . . by any county in which a portion of such bridge will be located if eligible under the provisions of paragraph (b) of subsection (1). Such petition shall be filed only by the governing body of such . . . county pursuant to a resolution, duly adopted by such governing body."

It appears from the allegations of the complaint that this bridge project is to be located wholly within La Crosse county in this state; that it is to be located on a state trunk highway as well as on a United States highway; that the bridge portion necessarily must be more than three hundred feet in length not including approaches, and that the cost of the bridge portion as estimated by the State Highway Commission will be much more than $75,000. The project therefore is clearly eligible to construction under the provisions of sec. 87.02 (1) (b). If such a bridge project should be constructed pursuant to the provisions of said sec. 87.02 then it is clear that La Crosse county is specifically prohibited from paying any portion of the cost thereof since sec. 87.02 (5) (b) provides:

"The cost of bridge projects *eligible under paragraph (b) of subsection (1)* shall be borne by the state and the counties in which any such bridge project is located. The state shall pay one-half of the cost except as hereinafter provided. The counties shall pay not more than one-half of the cost. If the bridge is located in more than one county, the portion of the cost to be paid by each shall be in proportion to their respective special benefits as determined by the state highway commission, *provided that if the bridge is located on a United States highway no portion of the cost shall be paid by any county.* Provided further, that no county shall be required to pay more than forty thousand dollars, nor shall any county in any case be required to pay an amount greater than one-fifth of one per cent of its assessed valuation as last fixed by

the state tax commission. In the determination of special benefits under this subsection, consideration shall be given to the amount of population, area, assessed valuation of property, and local traffic that will receive special benefits by reason of the project, and any other factors deemed worthy of consideration."

The language, "provided that if the bridge is located on a United States highway no portion of the cost shall be paid by any county" is so clear and definite in meaning as not to permit of a construction other than according to its "common and approved usage." Sec. 370.01 (1). That proviso was enacted into law by the 1935 legislature. Ch. 285, Laws of 1935. On March 15, 1935, a bill was introduced in the assembly to amend par. (b) of sub. (5) of sec. 87.02, Stats. 1933. That bill passed the assembly without amendment, and, so far as here material, provided "that no county shall be required to pay more than forty thousand dollars, nor shall any county in any case be required to pay an amount greater than one-fifth of one per cent of its assessed valuation as last fixed by the state tax commission." When the bill reached the senate it was referred to the senate committee on highways. An amendment to the bill was offered by that committee. The amendment proposed the insertion of the following:

"Provided that if the bridge is located on a United States highway no portion of the cost shall be paid by any county," and the striking out another portion of the bill which read as follows:

"In cases where such bridges are in such condition that the highway commission has imposed restrictions limiting loads to weights below those prescribed by section 87.07, and are to be constructed under findings made prior to January 1, 1940, no portion of the cost shall be paid by any county."

The amendment was adopted, and the bill, as so amended, was passed by the senate. Upon its return to the assembly, the amended bill was duly passed.

We may take judicial notice of the fact that in 1935 large appropriations were being made by the federal government in aid of the construction of United States highways, railroad crossings, and similar projects. It is clear that in adopting the amendment proposed by the highway committee of the senate, the legislature intended to prohibit counties from paying any portion of the cost of the bridge located on a United States highway. The attorney general concedes that if the project can be constructed only under the provisions of ch. 87, Stats., then La Crosse county is without authority to pay any portion of the cost thereof. But he contends that a bridge of the kind and character proposed to be constructed does not have to be constructed under the provisions of ch. 87, but may be constructed under the provisions of sec. 83.03 (6), Stats. That section provides:

"The county board may construct or improve or aid in constructing or improving any road or bridge in the county. If any county board shall determine to improve any portion of the system of county trunk highways with county funds, it may assess not more than forty per cent of the cost of such improvement against the town, village or city in which the improvement is located as a special tax, provided that the amount of such tax shall not exceed one thousand dollars in any one year; provided, that no assessment under this subsection shall be made against any town in which the combined appropriation of the town and county for the improvement of county highways in such year shall exceed two mills on the assessed valuation of such town. The county clerk shall certify such tax to the town, village or city clerk who shall put the same in the next tax roll, and the same shall be collected and paid into the county treasury as other county taxes are levied, collected and paid. A portion or all of such special assessment may be paid by subscription or donation."

While the first sentence of that section, standing alone, is broad enough to authorize the county board to aid in constructing any bridge in the county, it is clear that that sentence must be construed in connection with what follows.

That section obviously authorizes a county board on its own motion to construct or aid in constructing any bridge in the county, but that section, in our opinion, authorizes a county board to construct a minor bridge with county funds alone or with the aid of the town, village, or city in which the bridge is to be located, but without state aid. The amount which a county may assess against a town, village, or city is so small as clearly to indicate that the legislature had in mind the construction under that section of comparatively small and inexpensive bridges not located on state trunk or federal highways. There is no language in that section which authorizes state aid for such bridges, and, consequently, the legislature did not intend that that sentence should apply to state or federal highways.

Nor in our opinion is the contention of the attorney general strengthened by the provisions of sec. 67.04 (1) (d) which provides that a county may issue bonds for the following purposes:

"(d) To construct, acquire or maintain, or to aid in constructing, acquiring or maintaining, a bridge over and across any navigable or meandered stream bordering upon or intersecting the county."

Whatever independent authority, if any, might have been exercised by virtue of that provision alone, prior to the enactment of the amendment prohibiting a county from paying any cost of a bridge on a United States highway, it is now considered that it is limited by the language of that amendment. While the statutes relating to the construction of bridges may seem to be somewhat inconsistent and conflicting, reasonably justifying divergent conclusions as to their meaning, if the language thereof is construed by itself and without regard to other provisions, we think it clear that the legislature of 1935 was of the opinion that, from the effective date of ch. 285, Laws of 1935, no county should

contribute to a bridge project eligible to construction under sec. 87.02 (1) (b), and located on a United States highway.

It is our opinion, (1) that a bridge which is eligible for construction under the provisions of sec. 87.02 (1) (b) may not be constructed under other sections of the statutes; (2) that the bridge proposed to be constructed is clearly eligible under the provisions of that section; (3) that the law is such at the present time that no county is authorized to pay any part of the cost of such a bridge on a United States highway; (4) that the bonds proposed to be issued by La Crosse county for the purpose of raising funds to contribute to the proposed project are not authorized by law; and (5) that the demurrers were properly overruled.

It is perhaps unfortunate that La Crosse county is not presently authorized to pay a part of the cost of this project and that the construction of the bridge will consequently be delayed. The unanimous action of the board of supervisors in passing the supplementary bond issue resolution would seem to indicate that an overwhelming majority of the people of La Crosse county were in favor of contributing to the project. The legislature is about to convene, and, if in its wisdom the prohibition contained in sec. 87.02 (5) (b) is now deemed unwise, it may promptly repeal it.

*By the Court.*—The order of the circuit court is affirmed.