BARTH and others, Respondents, vs. VILLAGE OF SHOREWOOD and others, Appellants.

BAUMEIER and others, Respondents, vs. VILLAGE OF WHITEFISH BAY and others, Appellants.

*September 15—November 9, 1938.*

152

*Hubert O. Wolfe* of Milwaukee, attorney for the village of Shorewood, and *George H. Gabel* of Milwaukee, attorney for the village of Whitefish Bay, for the appellants.

For the respondents there were briefs by *Joseph A. Padway* of Milwaukee, attorney for Fred Baumeier and others, *Roland J. Steinle* of Milwaukee, attorney for Clarence F. Barth and others, attorneys, and *Carl N. Hill* of Madison, of counsel, and oral argument by *Mr. Steinle* and *Mr. Padway*.

Rosenberry, C. J.    The petitions for writ of *mandamus* set out the necessary allegations in regard to incorporation and the relation of the defendants to the corporations, allege the enactment of sec. 61.65, Stats.; that the village of Shorewood has a population, according to the census of 1930, of 13,479; that it is the duty of the defendant village and of the defendant trustees to comply with the provisions of sec. 61.65; that demand has been made upon the defendants for compliance with the section, and that such demand has been refused; that a reasonable time has elapsed; allege the interest of the petitioners in the subject matter of the controversy, and set out other matters with particularity to which it is not necessary to refer at this time.    Motion to quash the alternative writ is equivalent to a demurrer and raises the sufficiency of the complaint.    The only ground upon which the defendants assert that the complaint does not state facts sufficient to constitute a cause of action is that sec. 61.65 is unconstitutional.

Sec. 61.65 provides: *"Police and fire departments; pension funds.* (1) Every village having a population of five thousand or more, according to the last federal census, shall

have a police and fire department, with chiefs and subordinates; a board of police and fire commissioners; a police pension fund and a firemen's pension fund. All matters pertaining to the board and to appointments, promotions, suspensions, removals, dismissals, re-employment, compensation, rest days, sources of pension funds, control, management and administration of pension funds, eligibility for and payment of pensions, exemptions, organization and supervision of departments, contracts and audits, shall be administered, regulated and otherwise governed by the provisions of section 62.13 and amendments thereto, in so far as the same pertains to cities of the second or third class.

"(2) In the carrying out of the provisions of this section, the following words, whenever used in said section 62.13, shall, unless the context otherwise requires, have the following meaning:

"(a) 'Mayor' means village president.

"(b) 'Comptroller' means village clerk.

"(c) 'City Treasurer' means village treasurer.

"(d) 'Council' means village board.

"(e) 'City' means village.

"(3) When the amount in the firemen's pension fund shall be fifty thousand dollars, only the income therefrom, with the other revenues of said fund, shall be available for the payment of pensions.

"(4) Persons who are members of the police and fire departments in villages of five thousand or more, according to the last federal census, at the time of the taking effect of this act, shall automatically and without examination, become members of the police and fire departments of such villages under this section and shall be entitled to pension benefits, in accordance with the provisions of this section, for all prior service rendered.

"(5) The provisions of this section shall be construed as an enactment of state-wide concern for the purpose of providing a uniform regulation of police and fire departments."

The controversy arises over the fact that under the statutes of the state of Wisconsin, villages may be incorporated with a population of 150 to 400, depending upon the area.

When the population increases to 1,200, a village may become a city of the fourth class, or it may retain its village form of government without limitation as to population. Cities are divided into four classes: Sec. 62.05: (1) 150,000 population and over; (2) from 39,000 to less than 150,000; (3) 10,000 to less than 39,000; (4) less than 10,000 population. Once organized as a village or once organized as a city there is no minimum or maximum statutory population qualification, although a village may grow into a city and a city may decline into a village. The contention of the defendants is that sec. 61.65, Stats., is invalid because under its provisions a village having a population of 5,000 or more is required to comply with the provisions of sec. 62.13, which relates to cities of the second and third classes, while a city of the fourth class also having a population of over 5,000 is not required to comply. The result is that in villages of over 5,000 and in cities of 10,000 to 150,000, policemen's pensions and benefits are mandatory, while like provisions are not mandatory upon cities of the fourth class, although they may have a population of over 5,000. In villages over 5,000 and in cities of 10,000 to 150,000 population, rewards for the apprehension of criminals go to the pension fund with some exceptions; in cities under 10,000 population such rewards go to the persons entitled thereto. In villages of over 5,000 and in cities of over 10,000 population, firemen are required to be divided into two platoons, each of which shall be on duty alternately during hours fixed by the board, while in cities of 5,000 to 10,000 population, the only requirement is twenty-four hours off in each seventy-two hours. Sec. 62.13 (11). There are other differences but these are sufficient to illustrate the point.

It is strenuously contended that the classification under consideration is one not germane to the purpose of the law. It appears that according to the 1930 census there were in

Wisconsin many villages and nine cities having a population under 1,000, forty-five villages and twenty-five cities with a population of between 1,000 and 2,000; twenty-one cities and six villages with a population of between 2,000 and 3,000; and three villages and many cities with a population of over 4,000. It is contended that there is no substantial difference with respect to governmental matters between a village of 6,000 and a city of 6,000, and therefore no basis for classification.

This contention overlooks the fact that urban areas are by the constitution itself classified as villages and cities. Sec. 31, art. IV, provides:

"The legislature is prohibited from enacting any special or private laws in the following cases: . . .

"9th. For incorporating any city, town or village, or to amend the charter thereof."

Sec. 32, art. IV, provides: "The legislature shall provide general laws for the transaction of any business that may be prohibited by section thirty-one of this article, and all such laws shall be uniform in their operation throughout the state."

Sec. 3, art. XI, provides: "Cities and villages organized pursuant to state law are hereby empowered," etc.

These provisions clearly empower the legislature to create municipal corporations. Whether an urban area shall be incorporated as a village or a city is to be determined by the rule established by the legislature. By legislative enactment (sec. 61.01, Stats.), the inhabitants within the territorial limits there specified determine whether it shall be incorporated as a village. When so incorporated the village has all the powers prescribed by ch. 61, Stats. Sec. 61.58 provides another method by which the electors may determine that a village shall become a city. By sec. 62.06 any district containing a population of 1,500 or more and consisting of and containing an incorporated or unincorporated village may become a city.

It has been consistently held that the requirement of uniformity contained in sec. 32, art. IV, Const., does not prohibit classification. *Johnson v. Milwaukee* (1894), 88 Wis. 383, 60 N. W. 270; *State ex rel. Risch v. Trustees* (1904), 121 Wis. 44, 98 N. W. 954. Classification, however, must comply with the following rule: (1) All classification must be based upon substantial distinctions which make one class really different from another.; (2) classification adopted must be germane to the purpose of the law; (3) the classification must not be based upon existing circumstances only; (4) to whatever class a law may apply it must apply equally to each member thereof; (5) the characteristics of each class should be so far different from those of other classes as reasonably to suggest at least the propriety, having regard to the public good, of substantially different legislation.

The constitution authorizes the creation of two distinct classes of urban municipalities, and classification by the legislature being allowable within the constitutional classification, there is no basis for the contention that a village of 6,000 population, for instance, must have the same form of government as a city of 6,000 population, because they are not within the same constitutional class. Any contention therefore based upon the fact that a city of a specified population must be governed by the same law that governs a village of the same population is not sound. Sec. 61.65, Stats., creates two classes of villages, those having 5,000 population or more and those having less. So long as villages within these classes receive uniform legislative treatment, the constitutional provisions are fully complied with. The legislative classification is based not on urban area but upon the form of municipal organization. The contention that urban areas having equal population must be treated alike cannot be sustained.

It is next contended that sec. 61.65, Stats., is unconstitutional because it is contrary to sec. 3, art. XI, Const., com-

monly known as the home-rule amendment, which provides as follows:

"Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village. The method of such determination shall be prescribed by the legislature. . . ."

It is contended that sec. 61.65, Stats., deals with local affairs and government within the meaning of the home-rule amendment. Sub. (5) of the section provides:

". . . This section shall be construed as an enactment of state-wide concern for the purpose of providing a uniform regulation of police and fire departments."

In addition to that, in the case of *Van Gilder v. Madison* (1936), 222 Wis. 58, 267 N. W. 25, 268 N. W. 108, where the matter was under consideration, the court arrived at the conclusion that the entire matter of regulation of police was primarily a matter of state-wide concern. It is considered that for the reasons there stated the matter of fire protection is equally so. The state very elaborately regulates the issuance of fire insurance policies and prescribes their terms; the office of fire marshal has been created with a state-wide jurisdiction; the conservation commission is given broad powers with respect to fire protection, covering large areas of the state; and there are many other considerations which lead to the conclusion that the legislature was here dealing not with a local affair but with a matter of state-wide concern. The legislature declared the section to be a matter of state-wide concern. While this is not conclusive on the court, it is persuasive. It is considered that the section is not in conflict with the home-rule amendment.

It is also contended that sec. 61.65, Stats., is invalid because it violates secs. 1 and 22 of art. I of the constitution.

Sec. 1 provides: "All men are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."

Sec. 22 provides: "The blessings of a free government can only be maintained by a firm adherence to justice, moderation, temperance, frugality and virtue, and by frequent recurrence to fundamental principles."

The case of *Christoph v. Chilton* (1931), 205 Wis. 418, 237 N. W. 134, is cited in support of this contention. In that case it was held that an act of the legislature which authorized the detachment of agricultural lands from cities of the fourth class only was invalid because based upon an arbitrary and unreasonable classification. What that act attempted to do was to classify farm lands. It put them in one class when they were within the limits of a city of the fourth class and put them in another classification when they were within the limits of cities of the third class. No basis of classification was suggested except that of inclusion within city limits in cities of different classifications. This classification was held to be arbitrary. Upon the basis of that case it is argued that the classification embraced within the provisions of sec. 61.65, Stats., is arbitrary because under it a village of 6,000 is required to comply with certain provisions of the statute, while cities of the fourth class with an equal population are not required to do so. As has been pointed out, there is nothing in the constitution that requires all areas having an equal population to have uniformity of municipal government. If a village having over 5,000 population wishes to be governed by the same law which governs a city of the fourth class, the legislature has provided a way by

which it may become a city of the fourth class and enjoy all the rights and privileges of a city of the fourth class. We discover nothing in the act which in any way offends the equality provisions of the state constitution or the Fourteenth amendment to the constitution of the United States.

It is also contended that ch. 148, Laws of 1937, which created sec. 61.65, Stats., is a special law and invalid because contrary to the provisions of sec. 31 9th, art. IV, Wisconsin constitution. This contention is based upon the provisions of sub. (4) which are:

"Persons who are members of the police and fire departments in villages of five thousand or more, according to the last federal census, at the time of the taking effect of this act, shall automatically and without examination, become members of the police and fire departments of such villages under this section and shall be entitled to pension benefits, in accordance with the provisions of this section, for all prior service rendered."

Sec. 31 9th, art. IV, Const., already quoted is as follows:

"The legislature is prohibited from enacting any special or private laws in the following cases: . . .

"9th. For incorporating any city, town or village, or to amend the charter thereof."

Inasmuch as sec. 61.65, Stats., provides that persons who are members of the police and fire departments *at the time of the taking effect of this act,* it is argued that the act is a special law because by its terms the provisions of sub. (4) can only apply to the members of the police and fire departments of villages of 5,000 or more at the time ch. 148, Laws of 1937, went into effect. Whether or not this contention is sound depends upon the construction placed upon the language of sub. (4) "at the time of the taking effect of this act." It may well be that the most obvious construction to be placed upon the section is that contended for, that is, that

it applies only to members of the police and fire departments of villages of 5,000 or more at the time the act of the legislature went into effect. If it be so construed the members of the police and fire departments of villages which might grow into the classification would not automatically receive benefits because they were not members of the police or fire department of a village of 5,000 or more when ch. 148, Laws of 1937, was published and went into effect. It is considered, however, that the language of sub. (4) may fairly be given a different interpretation, and be held to apply to members of a police and fire department of a village growing into the classification. If the words "when such act takes effect" be interpreted to refer to the time when the act becomes applicable to a village, the constitutional difficulty disappears. It is true the act did not apply to a village of less than 5,000 inhabitants on May 19, 1937, when ch. 148 was published and went into effect but the language of sec. 61.65 (1) :

"Every village having a population of five thousand or more . . . shall have a police and fire department," etc.,

is inclusive and would apply clearly to any village growing into the classification. When a village grows into the classification the act takes effect so far as that village is concerned, and it could not take effect in such a village before the happening of that event. It is not an act therefore which applies only to existing circumstances, because other villages may be added to the class and the members of the police and fire departments of such villages will receive the same benefits as if within the classification when the act was published. Statutes have been held unconstitutional because they created a closed class in many cases, among them are the following: *Boyd v. Milwaukee* (1896), 92 Wis. 456, 66 N. W. 603; *Burnham v. Milwaukee* (1897), 98 Wis. 128, 73 N. W. 1018; *Neacy v. Drew* (1922), 176 Wis. 348, 187 N. W. 218. There can be no doubt under the doctrine of these

cases that a classification so constituted as to preclude addition to the numbers included within the class is invalid. However, if the act be construed as taking effect when a village grows into the classification, the classification created by ch. 148 does not come within the condemnation of the rule laid down in the cases referred to. It is the duty of the court to construe a statute so that it will be in harmony with the constitutional provisions if it is reasonably possible to do so. The rule is stated thus by the supreme court of the United States:

"The cardinal principle of statutory construction is to save and not to destroy. We have repeatedly held that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act. Even to avoid a serious doubt the rule is the same." *National Labor Relations Board v. Jones & Laughlin Steel Corp.* (1937) 301 U. S. 1, 30, 57 Sup. Ct. 615, 81 L. Ed. 893.

To the same effect are *Jessner v. State* (1930), 202 Wis. 184, 231 N. W. 634; *Dick v. Heisler* (1924), 184 Wis. 77, 198 N. W. 734; 11 Am. Jur. p. 725, and cases cited on that and successive pages.

The construction placed upon the act is not strained or farfetched. Sub. (4) would have secured to members of the police and fire departments in villages having a population of 5,000 or more, on May 19, 1937, the benefit of the act if the words "at the time of the taking effect of this act" had been omitted. While the language is not well chosen, it seems to be the clear intent and purpose of the legislature to secure the same rights to members of the police and fire departments of villages which may grow into the classification as were accorded to members of the police and fire departments of villages which already had a population of 5,000 or more. The subsection also provides that members of the police and fire department "shall be entitled to pension

benefits, . . . for all prior service rendered." This cannot refer solely to members of the police and fire departments of villages having a population of 5,000 or more when the act was passed and published. Prior service refers to a time prior to the time when the act became applicable to a village having a population of 5,000 or more, whether it had such population at the time the act was published or whether it grew into the classification and the act became applicable at a subsequent time.

*By the Court.*—The orders appealed from are affirmed.

FOWLER, J. (*dissenting*). I agree with the opinion of the court that the words of ch. 148, Laws of 1937, "at time of the taking effect of this act," should be construed as the time a village acquires the population designated by the act, according to the last federal census, instead of the time of "the passage and publication" of the act, just as the phrase "last federal census" in this act and in the statute classifying cities according to population does not mean the census next previous to the passage of the acts, but the one next previous to the time the population reaches the designated number.

But I think the act is unconstitutional because discriminatory under the Fourteenth amendment under the rule of *Christoph v. Chilton,* 205 Wis. 418, 237 N. W. 134. The *Chilton Case* involved a statute that provided for the detachment of agricultural lands from cities of the fourth class, but did not apply to villages of population equal to that of the fourth class or to other cities. The basis of the decision was that the act involved granted to owners of land in cities of the fourth class privileges that were not granted to owners of like property in like situations in other cities and villages. The action was brought, as here, by a citizen who invoked the statute and demanded its enforcement. The city in defense attacked the statute as unconstitutional. If the city of

Chilton might attack the statute there involved as unconstitutional, I see no reason why the defendant villages may not so attack the instant one. The attack in both cases is made on the ground that a statute adversely affects the residents of the municipality and therefore the municipality itself. In the *Chilton Case* the public would have been affected because by the withdrawal of agricultural lands from the city extra burdens of taxation would have been imposed on its residents. In the instant case extra burdens of taxation will be imposed on the residents of the villages involved by enforcement of the statute by imposing upon them the cost of administering the pension features of the act not met by the contributions of the members of the fire and police departments. Here, not only extra burdens of taxation are mandatorily imposed by the act, but burdens are imposed from which under the general law municipalities of like population are exempt, except pursuant to choice of the governing body of the municipality, and burdens are imposed in excess of those imposed by the choice of the municipality, because the contributions to the pension fund by the members of the fire and police departments under the instant act are less than those imposed by the general law. Under the general law a pensioner must have contributed for the full period of service requisite to entitle him to a pension. Under the instant act, he is given credit for all previous service, and need only contribute subsequent to the enactment of the statute.

The burden of taxation imposed by the instant act is vastly greater than that imposed by the act involved in the *Chilton Case*. I agree, of course, that population is a proper basis for classification of cities and villages, and that different forms of government and governmental regulation may properly be provided for villages and for cities of different classes. But this is not a mere matter of difference in form of government or governmental regulation. It is a matter

of imposition of burdens of taxation. It seems to me quite clear that if the decision in the *Chilton Case, supra,* was right, and I think it was, the decisions in the instant cases are wrong.

For the reasons stated, I think the judgments of the circuit court should be reversed with directions to dismiss the complaints.

FRITZ, J. (*dissenting*). It is provided in sec. 2 of ch. 148, Laws of 1937, that "this act shall take effect upon passage and publication." The wording of that usual provision is so plain and unambiguous that it probably has never been construed heretofore to mean anything else than that the act became effective on the date of its publication. That was on May 19, 1937, in this case. Consequently, that date was undoubtedly the time intended by the legislature in using the words "at the time of the taking effect of this act" in sub. (4), which provides:

"Persons who are members of the police and fire departments in villages of. five thousand or more, according to the last federal census, at the time of the taking effect of this act, shall automatically and without examination, become members of the police and fire departments of such villages under this section and shall be entitled to pension benefits, in accordance with the provisions of this section, for all prior service rendered."

That language is likewise plain and unambiguous. Its meaning clearly is that the persons upon whom there was thereby intended to be conferred,—"automatically and without examination,"—the status and benefits created thereby were those who "at the time of the taking effect of this act," *i. e.,* on May 19, 1937, "are members of the police and fire departments in villages of five thousand or more, according to the last federal census." And correspondingly, the burdens resulting by reason of the status and benefits thus conferred

were imposed only upon the villages having such departments and population on May 19, 1937. If,—as I am convinced,—that is the legislative intent under the plain and unambiguous language of that provision, then it is not subject to construction. As this court has said, "It is only when the language used is uncertain, indefinite, or ambiguous that resort may be had to construction." *Estate of Singer,* 192 Wis. 524, 527, 213 N. W. 479; *Schaut v. Joint School District,* 191 Wis. 104, 108, 210 N. W. 270. "Courts certainly should not be industrious in seeking out obscure or unusual meanings to attach to statutory expressions, when the words used are plain and unambiguous and the ordinary meaning is entirely reasonable." *Green Bay & M. C. Co. v. Telulah P. Co.* 140 Wis. 417, 421, 122 N. W. 1062; *Jorgenson v. Sparta,* 224 Wis. 260, 263, 271 N. W. 926; *Schaettle v. State Highway Comm.* 223 Wis. 528, 271 N. W. 63. As the villages of Shorewood and Whitefish Bay were the only villages having the specified population when the act went into effect on May 19, 1937, they were the only villages to which the provisions in sub. (4) were applicable under its terms. Consequently, the provision therein which limited the application of the vesting,—"automatically and without examination,"— of the preferential status and benefits conferred thereby to but those who were members of the departments on that date, and which imposed the corresponding burdens upon but those two villages resulted in a classification that is based upon existing circumstances only, and is so constituted as to preclude any addition to the persons and villages included in that particular class. The possibility of any such addition terminated by virtue of the very terms of sub. (4), when the act took effect on May 19, 1937. In villages thereafter reaching the specified population, members of the departments are not automatically and without examination given the civil-service status and pension rights; and as a conse-

quence the resulting burdens and obligations in those respects are not imposed upon such villages. It follows that the classification under sub. (4) is clearly a violation of the established rule that "the classification must not be based upon existing circumstances only. It must not be so constituted as to preclude addition to the numbers included within a class." *Johnson v. Milwaukee,* 88 Wis. 383, 391, 60 N. W. 270; *Boyd v. Milwaukee,* 92 Wis. 456, 464, 66 N. W. 603; *Burnham v. Milwaukee,* 98 Wis. 128, 135, 73 N. W. 1018; *State ex rel. Risch v. Trustees,* 121 Wis. 44, 98 N. W. 954; *Wagner v. Milwaukee County,* 112 Wis. 601, 607, 88 N. W. 577; *Cawker v. Central B. P. Co.* 140 Wis. 25, 28, 121 N. W. 888; *Neacy v. Drew,* 176 Wis. 348, 187 N. W. 218; *White Construction Co. v. Beloit,* 189 Wis. 5, 206 N. W. 908. Furthermore, because the effect and application of sub. (4) are thus restricted to but the two villages which had the specified population "at the time of the taking effect of this act," and to but the two groups of persons who were members of the departments of those villages at that time, instead of being equally applicable to all members of departments of villages which would thereafter have the required population, sub. (4) of the act is but a special and private, and not a general, law. "If," as is stated in Binney on Restrictions upon Local and Special Legislation (p. 78), "the membership of a class be unchangeable, then the law applies only to the individual members and never can apply to others. Such a law is clearly special." Because the act is a special law, the enactment thereof is in violation of the provisions in sec. 31 9th, art. IV, Const., that "the legislature is prohibited from enacting any special or private laws in the following cases: . . . 9th. For incorporating any city, town or village, or to amend the charter thereof." *Burnham v. Milwaukee, supra; Wagner v. Milwaukee County, supra.* In the *Burnham Case* the court, in passing upon a statute intended to

authorize the common council of any city of the first class *during the year 1897* to issue corporate bonds for the purpose of erecting garbage-reducing works, said,—

"That this act, when so amended, is special legislation amending the charter of the city of Milwaukee, and thus within the inhibition of sub. 9, sec. 31, art. IV, Const., is plain from a mere reading of the acts and reference to the principles laid down in *Johnson v. Milwaukee,* 88 Wis. 383, and *Boyd v. Milwaukee,* 92 Wis. 456. Milwaukee is the only city to which the act can possibly apply. It is the only city of the first class, *i. e.,* having a population of 150,000 and over. No other city can come into that class during the year 1897, or before the taking of the next census in 1900. Laws of 1895, ch. 238. It could be no more certain that the act applied to Milwaukee alone if it had been so expressed in words. The case is plainly ruled in this respect by *Boyd v. Milwaukee, supra.*"

The conclusions stated above compel me to dissent herein.

Mr. Justice FAIRCHILD authorizes me to note that he concurs in this opinion.