HOMER C. MITTELSTADT, Corporation Counsel, Eau Claire County *Page 86 
You advise that the Eau Claire County Board of Supervisors is considering a resolution to create a City-County Metropolitan Police Agency to serve Eau Claire County. You further indicate that "The intent of the resolution is to reorganize the existing Eau Claire City and Eau Claire County law enforcement departments into one agency to serve the needs of the County at large to include all cities, villages and towns therein." As a result of the foregoing, you request my informal opinion on whether there presently exists any legal authority for the creation of such a City-County Metropolitan Police Agency.
Your letter contains no detail as to the nature of the organization presently being considered. Presumably no firm concept has yet evolved. However, the lack of such specifics requires that I likewise respond in general terms. Viewed in such a context, I find little difficulty in concluding that the present Wisconsin Statutes present little possibility for such an intermarriage of police functions.
As previously indicated in 58 OAG 72 (1969), there is some latitude under the joint exercise of powers statute, sec. 66.30, Stats., for counties to contract with municipalities within the county to furnish or supplement certain law enforcement services in the municipality. It was also there pointed out, however, that cooperation does not displace duties imposed by statute. Thus, while such cooperative arrangements may be possible on a contractual basis, secs. 66.305 and 66.315, Stats., quite clearly provide that joint operation of the various local law enforcement agencies as a single law enforcement body is only authorized on a temporary emergency basis.
While most law enforcement agencies are authorized and required to enforce state law, or some portion thereof, most of them also have separate responsibility to enforce other more specialized and local laws relating solely to their separate governmental and territorial jurisdictions. In most instances, this latter law enforcement jurisdiction is exclusive and not subject to joint exercise with others except under the limited circumstances already described. *Page 87 
The varied nature of local law enforcement structure, which has evolved over the years, contributes in large measure to the present fragmentization which makes unified law enforcement activity more difficult. For instance, it has long been assumed that effective law enforcement requires a chain of command and authority and discipline characteristic of military organization. Such is no doubt true. However, in the course of the formalization of this concept by the legislature, varied and dissimilar organizational structures have evolved.
Article VI, sec. 4, Wis. Const., creates the office of sheriff at the county level of government. His powers and duties are not there enumerated, but sec. 59.23, Stats., does delineate the duties of the sheriff. Section 59.24, Stats., also grants necessary powers and duties to the sheriff in reference to his primary duty of preserving law and order throughout the county. See Andreski v. Industrial Comm. (1951),261 Wis. 234, 252 N.W.2d 135. Therefore, while the alteration of the duties of the sheriff may be permissible, the legislature is the body which, in the absence of constitutional restrictions, may vary, abridge or increase the duties of the sheriff. 47 Am. Jur., Sheriff, Police,Constables, § 27, at p 842; 80 C.J.S., Sheriffs and Constables, § 35, at p. 204. As pointed out by this office previously, even the county board cannot enlarge the duties of the sheriff which are purely statutory. 26 OAG 425 (1937).
Even conceptually, a City-County Metropolitan Police Agency could not exist without a head. Presumably, the present thought is that the sheriff would be called upon to perform this role. If so, his present responsibilities would be significantly expanded. For instance, the sheriff presently performs few functions relating to the enforcement of city, village or town ordinances, all of which constitute a considerable body of law within any county. The more obvious point I wish to make, however, is that nowhere in sec. 59.23, Stats., is there any mention of the type of responsibility which the metropolitan police agency concept proposes. Subsection (7) of that statute does provide that the sheriff is to "Perform all other duties required of him by *Page 88 
law." This provision has been interpreted as authorizing the imposition of certain duties upon the sheriff by ordinance, at least where such ordinance is clearly authorized by statute. 52 OAG 222, 226 (1963). I find no such clear authority for the organizational concept you describe. And, as more specifically stated in 29 OAG 428 (1940), at p. 484:
". . . In the performance of his statutory functions the sheriff is not subject to regulation of a legislative nature by the county board in the absence of a state statute conferring such power upon the county board. . . ."
I further direct your attention to the mandate of Art. VI, sec. 4, Wis. Const., which provides, in part, that ". . . Sheriffs shall hold no other office; . . ." The imposition of additional duties upon an existing office does not necessarily create a new office in violation of a prohibition against the holding by one person of two offices at the same time. 42 Am. Jur., Public Officers § 61, at p. 929. However, the appointment of the sheriff to head such a public agency as your letter contemplates, at least in the absence of statutory authorization, does suggest the possible application of the constitutional restriction on holding dual offices.
In addition to the foregoing, it appears that the basic differences in the present statutory command structure of local law enforcement agencies would have to be largely ignored in order to create a police organization such as contemplated. Thus, in addition to the fact that the salaries of deputy sheriffs are established by the county board and the deputies perform their services under the immediate direction of the sheriff, such a deputy may operate under any one of a number of civil service systems of selection, tenure and status or without any such protection. Sees. 59.21
(4) and (8), 59.07 (20) and 63.01 to 63.17, Stats. Peace officers in cities and villages, on the other hand, are subject to the authority of the chiefs of their respective police departments, who in turn are subject to the control of a municipal chief executive and governing body, except in those instances where a board of police and fire commissioners has been authorized to control and manage such departments pursuant to sec. 62.13 (6), Stats. And in cities in excess of 4,000 inhabitants *Page 89 
and in villages in excess of 5,000 inhabitants, appointments to positions in the police departments and disciplinary actions are solely in the hands of boards of police and fire commissions. Secs. 61.65 and 62.13, Stats. In fact, although salaries are fixed by the governing body, they may not be reduced without prior recommendation of such commission. Sec62.13, (7), Stats. In contrast, towns do not have authority to have a police and fire commission. 58 OAG 115 (1969). I judge it inconceivable that any organization, such as presently considered by your county, could be formulated which would reconcile these various statutory treatments of just one aspect which must be considered and overcome in order to implement any metropolitan police agency such as you describe.
Much more could be said in reference to the various differences in statutory treatment of local law enforcement officers' retirement systems and benefits and governmental liability for the acts of such officers. Such a discussion would only serve to demonstrate that the proposal presently being considered by the Eau Claire County Board of Supervisors is, as you point out in your letter, "frought with problems concerning administrative detail and implementation."
Two basic legal concepts make consideration of a City-County Metropolitan Police Agency largely unrealistic under our present statutes. One is the oft repeated judicial reminder that counties and towns have only such powers as are expressly granted by statute or which are necessarily implied. Maier v. Racine County (1957), 1 Wis.2d 384,84 N.W.2d 76; Pugnier v. Ramharter (1957), 275 Wis. 70, 81 N.W.2d 38. In addition, although Wisconsin villages and cities exercise home-rule under the basic constitutional grant ". . . to determine their local affairs and government. . ." under Art. XI, sec. 3, Wis. Const., the exercise of such home-rule power is subject to enactments of the legislature of state-wide concern. The following statement of the Wisconsin Supreme Court in VanGilder v. Madison (1936), 222 Wis. 58, 267 N.W. 25,268 N.W. 108, could hardly have been more dispositive of what rights and powers cities and villages possess, outside of those granted by the legislature in directing *Page 90 
the organization of their police function. At page 76 of that opinion, the court states as follows:
"The determination of other courts and a consideration of the fundamental reasons which underlie those determinations require us to hold that the preservation of order, the enforcement of law, the protection of life and property, and the suppression of crime are matters of state-wide concern. It is true that municipalities deal with many of these subjects and have done so for many decades. However, their power to deal with these matters is not derived from the home-rule amendment but from the legislature through legislative enactment. These powers so vested by the legislature in the municipalities may be withdrawn, modified, or dealt with as the public interest requires in the opinion of the legislature. . . ."
Our court has followed this general position to the present time. SeeLogan v. Two Rivers (1936), 222 Wis. 89, 267 N.W. 36; Barth v. Shorewood
(1938), 229 Wis. 151, 159, 282 N.W. 89; West Allis v. Milwaukee County
(1968), 39 Wis.2d 356, 365, 259 N.W.2d 36. Both of the foregoing basic legal principles clearly indicate that your county, and the various cities, villages and towns therein, must first seek and obtain proper legislative authority before attempting to organize a City-County Metropolitan Police Agency such as presently contemplated.
RWW:JCM